Mingo CLARK, Plaintiff-Appellee,

v.

**HUNTSVILLE CITY BOARD OF EDUCATION, et al.,**
**Defendants-Appellants.**

**No. 82–7257.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 17, 1983.

J.R. Brooks, Huntsville, Ala., for defendants-appellants.

Donald V. Watkins, Montgomery, Ala., for plaintiff-appellee.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

VANCE, Circuit Judge:

This employment discrimination suit arose when Herman Todd was chosen over Mingo Clark as director of vocational education for the Huntsville school system. Clark, then employed by defendant board as an assistant high school principal, was one of eight applicants for the position. Clark is black. Half of the applicants were employees of the school board (insiders); half, including Todd, a white, were outsiders. Assistant superintendent Don Tubbs interviewed all eight, narrowed the finalists to plaintiff, Todd, and Patterson, and recommended that Patterson, a white outsider, be selected. The superintendent concurred and recommended Patterson to the board, which offered Patterson the job. When he declined, Tubbs recommended Todd, who accepted the board's offer.

Plaintiff advanced several theories in the trial court and prevailed on a claim of disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. This appeal followed.

The district court purported to distribute the burden of proof between plaintiff and defendants in accordance with the principles of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct.

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1089, 67 L.Ed.2d 207 (1981). *Burdine* divides the issue of disparate treatment into three inquiries of ever-increasing specificity. At the threshold level a plaintiff alleging disparate treatment must establish by a preponderance of the evidence the elements of a prima facie case. To rebut the resulting presumption of unlawful discrimination, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). If the defendant succeeds, the plaintiff must convince the court by a preponderance of the evidence that the defendant's explanation for its adverse employment action is merely a pretext for discrimination. 450 U.S. at 253, 101 S.Ct. at 1093.

At trial, Clark established a prima facie case of unlawful discrimination. The defendants successfully rebutted the resulting presumption through evidence that they selected Todd due to his superior qualifications for the position.[1]

The difficulty with this case arises at the third step of the *Burdine* analysis. To demonstrate pretext plaintiff pointed to several school board policies, two of which provided:

Huntsville City Schools will employ qualified personnel to fill job vacancies which cannot be filled by the promotion or transfer of current employees.

Qualified persons within the local system who have demonstrated their ability will have first consideration for positions demanding more responsibility.

In the trial court, defendants argued that the policies existed only to break ties between equally qualified applicants. According to defendants the policy never came into play, since Todd was more qualified than Clark. The trial court, however, rejected this interpretation of the policies as "not objectively credible" and instead construed the provisions to prefer minimally qualified current employees over outsiders for promotion, regardless of the relative qualifications of the insider and the outsider. Since the prima facie case established Clark's minimal qualifications,[2] and since defendants did not observe the policies as construed, the court concluded that defendants intentionally discriminated against Clark.

■ Where the defendant's explanation lacks credibility or where discrimination is the more likely motive, a case is made for pretext. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. If the employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail. *See Olafson v. Dade County School Board,* 651 F.2d 393, 395–96 (5th Cir.1981) (Unit B).

---

1. In assigning Tubbs to conduct interviews, the superintendent stressed he wanted an individual who was capable of rechanneling the vocational education program away from mechanical skills toward technical and scientific proficiency. Tubbs identified the following factors as leading to his conclusion that Todd was better qualified for the job as director of vocational education: (1) Todd possessed a doctorate in industrial and adult education; Clark held two master's degrees, but no doctorate; (2) Todd had taught vocational and technical education to future vocational education teachers at several southern colleges; Clark had taught industrial arts and vocational education courses at the high school level for several years and had taught part-time at an area college; (3) Todd had helped write successful proposals for federal funding; Clark had not; (4) Todd had several years' experience with three scientifically and technically oriented firms; Clark's three months of experience had occurred almost 20 years previously; (5) Todd had been personally responsible for the budget of a state university's rehabilitation department; Clark had some experience in handling a high school athletic department budget. The trial court found that defendants did not initially consider Todd's doctorate and thus disregarded it as a factor. Defendants do not challenge this finding on appeal.

2. The district court thus apparently included as an element of plaintiff's prima facie case the second element of the paradigm set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973): "that he applied and was qualified for a job for which the employer was seeking applicants." Defendants do not contend that plaintiff failed to establish his prima facie case.

■ In this case, however, the district court concluded that the school board's policies reduced the question of relative qualifications to one of irrelevance.[3] The policies as construed by the court may properly be used in determining whether pretext exists. The inconsistency between the assertion that a qualified insider was rejected because an outsider was more qualified and a written policy to prefer qualified insiders regardless of the outsider's greater qualifications may cast doubt on the truth of defendants' reliance on the outsider's greater qualifications. *See United States Postal Service Board of Governors v. Aikens,* ── U.S. ──, ── n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983).[4]

The lower court, however, did not find that defendants did not rely on Todd's greater qualifications; it found merely that defendants' policies did not *allow* them to rely on Todd's superior qualifications. Instead of simply noting that reliance on Todd's greater qualifications would be at odds with defendants' policies and that defendants therefore probably did not rely on those qualifications, the court leapt directly from its interpretation of the policies to a conclusion of intentional discrimination.

■ The distinction between the two approaches, although perhaps elusive, is not specious. While adherence to the former analysis ensures that the court finds pretext before it holds for the plaintiff, under the district court's framework a finding of pretext is immaterial. The latter approach allows the court, as here, to find intentional discrimination by actions inconsistent with a stated policy without a showing that defendants disregarded the policy for discriminatory reasons rather than in a good faith effort to hire the best person available.

**3.** Whether the district court's interpretation was correct is not presently before us. As is discussed more fully elsewhere in this opinion, defendants in brief have challenged the lower court's use of the policies to support its finding of intentional discrimination and have pointed to their consistent resort to relative qualifications to demonstrate that plaintiff received treatment no different from other employees. A reading of defendants' brief and reply brief,

Even if defendants incorrectly believed that their policy allowed consideration of relative qualifications, if they nonetheless based their decision on Todd's superior qualifications and not on plaintiff's race, they have not violated Title VII. *See Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256–57 & n. 6 (5th Cir.1977). *Cf. Wright v. Western Electric Co.,* 664 F.2d 959, 964 (5th Cir.1981).

■ The lower court's misapprehension of the requirements for pretext melds with its confusion over the mental state that a Title VII disparate treatment defendant must have. Under *Burdine,* plaintiff must prove "intentional discrimination" to prevail. 450 U.S. at 256, 101 S.Ct. at 1095. The district court, relying on the section 1983 case of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), interpreted this phrase to impose liability on a Title VII disparate treatment defendant "for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. Utilizing this lax standard, the court easily found that Clark was the victim of "intentional discrimination": the natural consequence of defendants' failure to follow their policy, as construed by the court, was to award to Todd a position that otherwise would have fallen to Clark.

We need not address the social desirability or logical consistency of the district court's adopted mental standard. The Supreme Court views disparate treatment as something more than a simple cause and effect relationship between an employer's actions and the plaintiff's disappointed expectations. In *Burdine* the same Court that referred to "intentional discrimination"

however, fails to disclose a challenge to the district court's interpretation of the policies.

**4.** Although a trial court may reassess the applicants' qualifications and weigh them differently, with any discrepancy probative of defendants' pretext, *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096, the court below declined to do so. *See Olafson v. Dade County School Bd.,* 651 F.2d at 395 n. 3 (trial court is under no duty to determine the better candidate).

couched the defendant's rebuttal burden in terms of evidence "that the employment decision had not been motivated by discriminatory animus." 450 U.S. at 257, 101 S.Ct. at 1095. Six years ago the Supreme Court in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), unequivocally stated that "[p]roof of discriminatory motive is critical" in a disparate treatment case. *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15. The Court recently equated the "intentional discrimination" test of *Burdine* with less favorable treatment of certain people "because of" their race. *United States Postal Service Board of Governors v. Aikens,* —— U.S. at ——, 103 S.Ct. at 1482. Our cases as well have assumed that intentional discrimination goes beyond an action taken with awareness of and in spite of its natural consequences. *See, e.g., Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1141 (11th Cir.1983) ("discriminatory motive"); *Watson v. National Linen Service,* 686 F.2d 877, 881 (11th Cir.1982) ("discriminatory purpose"); *Brown v. A.J. Gerrard Manufacturing Co.,* 643 F.2d 273, 276 (5th Cir.1981) ("discriminatory animus").

■ The issue of the proper intent standard and that of pretext overlap because plaintiff's burden of showing pretext "merges" with the ultimate burden of demonstrating unlawful discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McWilliams v. Escambia County School Board,* 658 F.2d 326, 331 (5th Cir.1981) (Unit B). Only when defendants' articulated reason is pretext "for accomplishing a racially discriminatory purpose" will the plaintiff recover. *Watson v. National Linen Service,* 686 F.2d at 881. The court thus may not circumvent the intent requirement of the plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the defendant did not truly rely on its proffered reason, without a further finding that the defendant relied instead on race, will not suffice to establish Title VII liability.[5]

Because the district court labored under a misapprehension of the legal requirements of pretext and intentional discrimination in a Title VII disparate treatment case, we reverse the judgment below and remand for new findings in light of the controlling legal principles. The lower court on remand must ascertain whether defendants' given reason for hiring Todd rather than promoting Clark—that they believed Todd to be better qualified—was their actual reason, or whether defendants instead passed over Clark because of his race. In so doing, the court may consider as probative any discrepancy between defendants' written promotion policies and their proffered reason. For Clark to prevail, however, he must convince the court that defendants operated not in reliance on Todd's greater qualifications but rather with a racially discriminatory motive, purpose, or animus.[6]

REVERSED and REMANDED.

---

**5.** We stress that our opinion does not preclude the trial court from basing its finding of a racially discriminatory purpose on circumstantial evidence, including the defendant's failure to rely on the reasons on which it claimed to rely. We state merely that the plaintiff must in fact persuade the court that the defendant acted with a discriminatory purpose.

**6.** Defendants, quoting *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, argue that plaintiff failed to prove that "similarly situated employees were not treated equally." Because all insider applicants, regardless of race, were measured against outsider applicants on the basis of relative qualifications, defendants contend that Clark was treated the same as all other employees applying for promotion and that therefore defendants cannot be held to have "discriminated" against him.

It is far from clear that the district court made any finding of fact concerning defendants' practice with respect to promotions. At any rate, defendants' argument misconstrues the phrase "treated equally." The term refers to the employment decision, not to the articulated reason claimed by defendants to motivate the employment decision. *See id.* at 256, 101 S.Ct. at 1095 ("The plaintiff retains the burden of persuasion ... to demonstrate that the proffered reason was not the true reason for the employment decision."). This distinction is important because of the requirement in a disparate treatment case of a racially discriminatory motive. Proof that defendants subject all insider applicants, regardless of race, to a comparison with outsider applicants does not preclude demonstration that in plaintiff's case the

comparison served merely as a pretext to deny plaintiff the promotion because of his race.

The Supreme Court has made clear that trial courts hearing Title VII disparate treatment cases should consider all the evidence presented and accord it whatever weight it deserves. *United States Postal Service Board of Governors v. Aikens,* —— U.S. at —— n. 3, 103 S.Ct. at 1481 n. 3. A finding by the court below that defendants consistently gauged the relative qualifications of applicants clearly would be probative of whether defendants' stated reason is pretextual. Such a finding, however, does not compel a decision in favor of defendants for lack of unequal treatment. The unequal treatment that plaintiff must show is that he was denied the promotion when a similarly situated white person would have received it.