**Erminel LOVE, Plaintiff,**

**v.**

**ALABAMA INSTITUTE FOR DEAF AND BLIND, et al., Defendants.**

**Civ. A. No. CV84–PT–1084–E.**

United States District Court,
N.D. Alabama, E.D.

Nov. 29, 1984.

Theron Stokes, Alabama Educ. Assoc., Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., for plaintiff.

William F. Gardner and R. Michael Leonard, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PROPST, District Judge.

This Title VII cause premised on allegations of sex and race discrimination came on to be heard on November 5, 1984 at a bench trial.

The parties have stipulated as to a substantial portion of the facts. (See Px–13). The court finds but will not reiterate those facts. Several of the alleged facts in said exhibit were disputed. The court makes the following findings of fact with respect to said disputed matters.

II.2. Plaintiff does *not* hold an AA degree in Education and Administration. Plaintiff has not been formally rated during her employment, thus it is not a fact that "At all times during her employment, plaintiff's work performance has been rated as outstanding."

14. The screening committee members *were* directed/requested to rank or prioritize the applicants/candidates. See findings on record by court at conclusion of trial and discussion by court during the trial.

19. There was no evidence that the defendant has ever employed any black or female principals. Defendant has employed both black persons and females in non-school administrative positions.

The court supplements said findings as follows:

8. The 20 applicants included 16 white males, one black female, one oriental female, and two white females.

11. The final six included five white males and plaintiff.

14. The screening committee members were not specifically told that numerical weights would be given to their rankings. The court deems this to be insignificant in view of the fact that the rankings must have been reasonably expected to be weighted in some fashion.

18. Wade was extremely well qualified for the position as is evidenced by the testimony and the exhibit summarizing his experience. Although it is not necessary for the court to do so, it finds from a preponderance of the evidence that Wade was better qualified for the position than plaintiff. (See later discussion).

■ The court finds and concludes that plaintiff established a prima facie case of racial and sexual discrimination. She did this by proving that she belongs to protected classes (black and female); that she applied for a job for which the defendants acknowledged she was at least minimally qualified; that she was rejected; and that defendants hired an applicant (white male) with qualifications similar to those of plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ The defendant produced substantial evidence that Philip Wade was preferred to plaintiff and given the sought position because he was determined to be the most qualified of the 20 applicants for the position and that this decision was made by a selection committee established for that purpose. Thus the burden remains with the plaintiff to persuade the court that she has been the victim of intentional discrimination. She may accomplish this directly by persuading the court that discriminatory reason(s) more likely motivated the defendant(s) or indirectly by showing that the defendants' proffered explanation is incredible. *Burdine, supra.*

■ Plaintiff argues that the following alleged evidence creates inferences which should persuade the court that the defendants' proffered reason(s) are pretextual and that she has been the victim of intentional discrimination.

(1) That the procedures by which the choice was made are suspect; the selection committee being dominated by white males.

(2) There were no fixed or reasonably objective standards and procedures for evaluating the applicants.

(3) The defendants departed from their usual procedures in making the selection.

(4) Wade did not meet the minimum requirements for the position.

(5) No blacks or females hold administrative positions with defendants.

(6) Defendants had entered into a conciliation agreement under which they agreed to affirmatively seek and employ minority applicants in administrative positions.

The court will address these contentions, *seriatim.*

(1) In view of the dominant influence of white males on the selection committee and the ultimate appointment being made by a white male, the court has carefully scrutinized the selection process as if it were suspect. The court finds and concludes, however, that the process was conducted fairly and with no discriminatory animus. The two black females on the committee ranked Wade above the plaintiff.[1] There has been no hint or suggestion that the committee went about its consideration in less than a diligent, dedicated, non-discriminatory manner. All witnesses acknowledged that they detected no motive other than to select the best qualified person. The evidence was that they approached their duties with sincerity and interest.

2. The selection committee members who testified pointed to several objective standards they considered in making the selection. These included:

(a) Wade's experience in securing governmental grants (over $2,000,000.00 in four years).

(b) Wade's managerial experience (supervising over 200 people in his last job) ($3,000,000.00 budget).

(c) His experience with multi-handicapped children with both sight and hearing impairments and his broader experience in being involved with lower functioning children.

(d) Experience in budgeting.

All witnesses who specifically addressed these points ranked Wade higher than plaintiff on all these points of legitimate concern. Although it is not necessary for the court to so find, the court also finds Wade to be more qualified than plaintiff in all these areas.[2] Notwithstanding the assignment of numerical weights or ranking the applicants, Wade was named on all ten ballots; plaintiff on two. Wade was listed as number one on eight ballots; plaintiff on none. The court is satisfied that the selection committee members who testified were sensitive people concerned with a highly sensitive position. No evidence has questioned their good faith, other than by subjectively asserting that their decision was, of necessity, discriminatory. The court does not agree. The President of defendant, as he customarily does, appointed the top choice of the selection committee. The court was well impressed with the record and demeanor of the plaintiff. The court was equally impressed with the record and demeanor of all the witnesses. The court cannot substitute its judgment for that of

---

**1.** Although they now deny that they intentionally "ranked" any applicants, Wade was listed No. 1 on each ballot. The court is satisfied that these witnesses' initial correct disavowal of knowledge that the rankings would be assigned numerical weights has resulted in an ultimate denial of the whole ranking process. The court is not satisfied that they were not aware that

they were ranking at the time. The ballots were initially presumed to be "secret."

**2.** It is not necessary that the court determine what weight, if any, to give to the testimony of some witnesses that plaintiff is rigid in the positions she takes. Plaintiff admitted that she tends to be blunt.

the selection committee. If it could, it would not likely be different.

(3) The court detected no radical departure from normal selection procedures. The only exceptions were two instances of lateral transfer.

(4) Although Wade did not have a Rank 1 Certificate, plaintiff acknowledged that the President of Harvard could not obtain a Rank 1 Certificate without first taking a prescribed course in Alabama.[3] Wade had the Mississippi equivalent (AA in Mississippi). He, like plaintiff at the time of her hiring and later promotion, was given an opportunity to complete the requirements.[4] He is in the process of so doing. His record is certainly impressive enough to allow him this opportunity. The court does not find any lack of good faith in this · action. *See Clark v. Huntsville Board of Education,* 717 F.2d 525 (11th Cir.1983).

The court is fully satisfied that the whole selection process was fairly conducted in a non-discriminatory manner. "Even if defendants incorrectly believed that [Wade need not have a Rank 1 Certificate], if they nonetheless based their decision on Todd's superior qualifications and not on plaintiff's race [or sex], they have not violated Title VII." *Clark v. Huntsville City Bd. of Education, supra* at 528 and cases cited therein.

(5) The lack of blacks and females in higher positions is a cause of concern. It is not, however, decisive of the question of whether this plaintiff has been the victim of intentional discrimination. *See Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (1984). The court notes that blacks and females are well represented in professional positions.

(6) No conciliation agreement was offered into evidence. There was no evidence that any such agreement precluded defendants from selecting the best qualified candidates.

There was no direct evidence of discrimination. The plaintiff acknowledged that she has generally been treated with due respect and that her relationship with all has been good. Plaintiff apparently attempts to raise an inference of discriminatory animus from Dr. Patterson's statement that plaintiff's interpersonal relationships were questionable and that her attitudes are too rigid. Under the circumstances of the sensitive nature of the job, this is a valid concern. Defendants' employees must deal continuously with severely handicapped children, their justifiably distressed parents, and fellow employees who justifiably feel the stress of the situation.

The court ultimately finds and concludes that the defendants acted in good faith in determining that Wade was the best qualified applicant. Further, that the court is not satisfied by a preponderance of the evidence that defendants' articulation that it hired Wade because he was better qualified is incredible. Further, that the court does not find that discriminatory reason(s) more likely motivated defendants. The court ultimately finds and concludes that plaintiff was not the victim of intentional discrimination.[5]

---

**3.** The court notes that at least one white male with a doctorate degree was rejected.

**4.** Applicants were generally given three years to obtain the appropriate certificate.

**5.** This conclusion is supported by an EEOC finding and a finding of the Office of Civil Rights, Department of Education. Both of these findings are entitled to some weight. *See Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir.1972).