Sharon R. SMITH Plaintiff-Appellant,

v.

PAPP CLINIC, P.A., Defendant-Appellee.

No. 86–8277.

United States Court of Appeals, Eleventh Circuit.

Feb. 2, 1987.

---

Annie R. Simmons, Robert L. Simmons, Atlanta, Ga., for plaintiff-appellant.

Kevin B. Buice, Carrollton, Ga., for defendant-appellee.

Before GODBOLD, and VANCE, Circuit Judges, and SWYGERT,[*] Senior Circuit Judge.

GODBOLD, Circuit Judge:

This appeal is from a judgment in favor of defendant PAPP Clinic on Title VII and § 1981 claims.

Plaintiff Smith, a black female, was employed by the PAPP Clinic as a lab technician. Plaintiff and another employee, Shumake, a white female, shared the duty of closing the lab each evening, with each responsible for closing the lab for one week at a time. Under company policy, the lab was to remain open until 6:00 p.m. unless the employee charged with closing it had checked carefully with all of the doctors or their nurses and determined that no more lab work was required that day, in which case the employee could close the lab at 5:30.

Smith was fired as a result of events that occurred on Friday, January 27, 1984. Smith was acting as supervisor because Rogers, the supervisor of the lab, was absent. Shumake, whose duty it was to close the lab that week, had become drowsy because of medication she had taken and had lain down during the morning but had returned to work after lunch. At approximately 5:30 Smith determined that there were no doctors in surgery. Shumake told Smith that she had checked with all the nurses and that there was no more lab work to be done that day. Both plaintiff and Shumake then left the lab at approximately 5:30. Later that evening supervisor Rogers was informed that a doctor had needed lab services after 5:30. After an investigation the next day by Rogers, Smith was fired and Shumake was given a written warning that became part of her permanent personnel file. Smith's separation notice said that she was discharged for "negligence of a situation in which she was left to supervise," specifically:

1. [Smith] was in charge of laboratory on January 27, 1984, and failed to send an employee [Shumake] home that was taking prescribed medication.

2. [Smith] ignored laboratory policy of staying in lab until six p.m. and/or until all the doctors are finished for the day. She left the premises before six p.m. while patients were still present.

After receiving a right to sue letter from the EEOC, plaintiff filed a Title VII action and a § 1981 action alleging race discrimination. The district court found for PAPP Clinic on plaintiff's Title VII claim and a

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

jury returned a verdict in favor of the clinic on Smith's § 1981 claim. On the Title VII claim the district court made four findings:

One, that any difference in treatment between the plaintiff and anyone else was justified by the employment records involved and the factual circumstances that existed.

Two, that plaintiff has made no showing of intentional discrimination.

Three, the articulated legitimate nondiscriminatory reasons offered by the defendant were credible and justified and constituted an honest belief by the defendant.

Four, that the race of the plaintiff played no part in the defendant's decision to discharge the plaintiff.

Rec. Exc. R3-397-398.[1]

■ Smith contends that the district court's findings on her Title VII claim were clearly erroneous. The legal framework within which claims of discrimination under Title VII and § 1981 are to be analyzed has been set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The district court found as a matter of law, and PAPP Clinic does not challenge the finding, that Smith proved a prima facie case of race discrimination. The burden of production then shifted to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employment decision. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. The defendant need not persuade the court that it was actually motivated by the proffered reasons; it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* at 254-55, 101 S.Ct. at 1094. As noted above, the district court found that PAPP Clinic carried its burden, and that conclusion is not erroneous.

Smith then had the opportunity to prove by a preponderance of the evidence that PAPP Clinic's proffered reasons for treating her differently than Shumake were not the true reasons for the employment decision but were a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093. This burden merged with the ultimate burden of persuading the court that she had been the victim of intentional discrimination. *Id.* at 256, 101 S.Ct. at 1095. The district court found that Smith did not satisfy this burden.

The trial court's findings regarding intentional discrimination or the absence thereof are findings of fact which will be overturned on appeal only if they are clearly erroneous. *See Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Baylor v. Jefferson County Board of Education,* 733 F.2d 1527, 1532 (11th Cir.1984). We cannot say that the district court's findings of non-pretextual reasons were clearly erroneous.

PAPP Clinic contends that Smith was disciplined differently than Shumake not because of race but rather because their situations were different. It argues that although Shumake had the responsibility for closing the lab that week, plaintiff, as the supervisor on the day in question, had the ultimate responsibility for closing the lab that day because Shumake had taken medication that had made her drowsy and could have affected her ability to work effectively. Working on the assumption, therefore, that both Shumake and Smith were responsible for the improper closing of the lab, PAPP Clinic explains that Smith deserved the more severe punishment of discharge because (1) she had supervisory responsibilities in the lab; (2) she was in charge of the lab on that day and had participated in closing it; and (3) she had three prior written warnings in her personnel file for infractions of company policies, including prior counseling regarding improper closing of the lab.

---

**1.** The district court set out these findings in the course of giving its instructions to the jury. Although these findings are not in the precise form anticipated by F.R.Civ.P. 52(a), they are sufficient to satisfy the rule's requirements.

Given that Smith was acting as supervisor that day and that Shumake was ill part of the day, the district court could conclude that Smith shared the responsibility for closing the lab that day. The district court was in the best position to judge the credibility of witnesses and to conclude that Smith and Shumake had violated the lab closing policy despite their efforts to check with all the doctors. Finally, although PAPP Clinic did not refer to the prior reprimands as reasons for the discharge until after Smith had filed her EEOC complaint, the written reprimands were in her file and, although she denies that such reprimands were justified, Smith does not deny that the events underlying them took place. Given the evidence in the record and Rogers' testimony that she relied on the reprimands in Smith's file when deciding to discipline plaintiff more severely than Shumake, the district court's findings are not clearly erroneous.

Although PAPP Clinic treated Smith and Shumake differently, it has not violated Title VII if this differential treatment was unrelated to race. The district court correctly applied the *McDonnell Douglas* analysis and concluded that Smith failed to demonstrate that PAPP Clinic's proffered reasons for discharging Smith were pretextual and therefore failed to carry her ultimate burden of proving intentional discrimination. This is a fact sensitive case in which the district court's evaluation of the credibility of witnesses and the weight of the evidence must be given deference unless its conclusions were clearly erroneous. We cannot say that the district court's conclusions were clearly erroneous.

■ Smith also challenges the jury's verdict for the defendant on the § 1981 claim of intentional race discrimination. A jury is free to choose among reasonable constructions of the evidence, and the jury's verdict must be sustained if there is substantial evidence to support it, considering the evidence and the inferences that may be drawn from it in the light most favorable to PAPP Clinic. *See Hamling v. U.S.,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41

L.Ed.2d 590 *reh'g denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *U.S. v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982), *aff'd* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *Liberty Mutual Insurance Company v. Falgoust,* 386 F.2d 248, 253 (5th Cir.1967). It is not the function of this court to weigh conflicting evidence, judge the credibility of witnesses and arrive at a conclusion different from that of the jury if there is a reasonable basis in the record for the jury's verdict. *Falgoust,* 386 F.2d at 253. Like the trial court's determination regarding Smith's Title VII claim, the jury's verdict turned largely upon the credibility of the witnesses and the weight of the evidence, matters that cannot be reassessed on appeal. We find that the jury's conclusion that the discharge of Smith by PAPP Clinic was not racially motivated is supported by the evidence in the record.

Smith urges that the district court erred in charging the jury on the § 1981 action that:

[I]f an employer discharges an individual under an honest belief pursuant to the information available to the employer that the employee has violated a policy of the employer, the fact that the employer's belief may be mistaken or wrong in fact does not mean that such belief cannot constitute a legitimate reason for the employer's discharge of the plaintiff.

The issue before this court is whether, taken as a whole, the issues and law were properly presented to the jury. *U.S. v. Abravaya,* 616 F.2d 250, 251 (5th Cir.1980). Instructions are considered adequate if the jury understood the issues and the controlling law and was not misled in any way. *McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 759 (5th Cir.1979).

The district court's instructions were adequate. Because § 1981 requires proof of discriminatory intent, the issue in a § 1981 action is whether the employer fired the employee *because of his or her race.* The charge correctly instructs the jury that if the employer fired an employee because it honestly believed that the employee had

violated a company policy, even if it was mistaken in such belief, the discharge is not "because of race" and the employer has not violated § 1981. *See Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir.1977). The charge was appropriate in this case because if the jury found that Rogers discharged Smith because she honestly believed that Smith had violated the lab closing policy, it could not have found PAPP Clinic to have intentionally discriminated against Smith on account of her race.

AFFIRMED.

SWYGERT, Senior Circuit Judge, dissenting:

I respectfully dissent from the affirmance of the district judge's decision in favor of the PAPP Clinic with regard to plaintiff's claim of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* I believe the judge committed clear error in his findings, in particular, that the articulated legitimate, nondiscriminatory reasons advanced by the Clinic for plaintiff's discharge from her employment were justified (not pretextual) and that she was not the victim of racial discrimination. It is axiomatic that matters of credibility are, ordinarily, not open to appellate review. Here, however, the judge made no subsidiary findings in support of his ultimate conclusions. We must, therefore, resort to the record in order to determine whether those findings were free of error. Such an examination permits, in my opinion, but one conclusion: the plaintiff's discharge was racially motivated.

The evidence shows the following essential facts. The PAPP Clinic had an established practice of keeping the laboratory open until 6:00 p.m. on a weekday so that it would be available until that time to perform tests for Clinic physicians; however, a 5:30 p.m. closing was permitted if, after a careful check, it was determined by those in charge of testing that no more tests would be required. On the day in question, both Shumake and Smith were on duty during the afternoon hours. It was Shu-

make's responsibility on this particular day to close the laboratory. (Smith and Shumake rotated that responsibility on a weekly basis.) Just before 5:30 p.m., a test was performed on a patient; Shumake then asked Smith to ascertain if any doctors were in the surgery department. After she checked, Smith informed Shumake that there were no doctors in surgery. Shumake in turn told Smith that Dr. Barron's nurse, Jean Owens, called to say the doctor had finished his testing of a patient. (Jean Owens denied making this telephone call. Credibility of whether she did telephone does not affect the undisputed evidence that Shumake told Smith that the call had been made.) Thereafter and at some point before 6:00 p.m. the laboratory was closed and both Smith and Shumake left the premises. As it developed, Dr. Barron determined that he needed an additional test and upon learning that the lab was closed, he took the culture to another hospital for the necessary test. The following morning Smith's employment was terminated. Shumake received only a reprimand.

Ordinarily, Shumake worked part-time during the afternoon hours. Another laboratory assistant worked during the morning hours. On the day in question, because she had to perform a personal errand, Smith asked Shumake to substitute for her during her absence. Sometime after coming to work, Shumake was given medication because she was suffering from something she had eaten earlier. She became drowsy and fell asleep. When Smith came to work about 11:00 a.m., she suggested that Shumake lie down and she did so. Later, Shumake's mother came to the laboratory and took her daughter to lunch. Upon returning, Shumake said she was feeling better and she worked the remainder of the day.

Smith was told at the time of her discharge that she had been negligent in two situations over which she was given supervision: (1) Smith, while in charge of the laboratory on January 27, 1984, failed to send Shumake home after learning that the latter had taken prescribed medicine; and (2) Smith did not follow Clinic policy of keeping the laboratory open until 6:00 p.m.

or until the doctors had no need for further testing; that she "left the premises before 6 P.M. while patients were still present."

With respect to the first charge of dereliction of duty, there is a dispute as to whether Smith was sufficiently in charge to have the authority to send Shumake home earlier in the day. That disputed fact is of no importance, however, because there is no evidence showing that Shumake was under any incapacity to perform her duties upon her return from lunch. She took no further medication, she did her assigned work, and her earlier indisposition was apparently no longer present. Given this state of the facts, the accusation of negligence on the part of Smith was false and, under any reasonable interpretation, the accusation served only as a pretext and not as a valid reason for Smith's discharge from employment.

The events surrounding the closing of the laboratory on January 27, 1984 and the Clinic's reaction to those events are of a similar nature. Although it was Shumake's week to close the laboratory, it can reasonably be assumed that, as it turned out, both Smith and Shumake had that responsibility on the day in question. There can be no doubt that after checking with the doctors' offices, they jointly understood that no more testing was required. It is difficult to conclude in these circumstances that any negligence was involved. But, even if it was, the disparate treatment imposed for the infraction of Clinic policy leads to but one inference: race was the dominating factor for such treatment.

The majority opinion refers to PAPP Clinic's proffered reasons why Smith "deserved the more severe punishment of discharge because (1) she had supervisory responsibilities in the lab; (2) she was in charge of the lab that day and had participated in closing it; and (3) she had three prior written warnings in her personnel file for infractions of company policies, including prior counseling regarding improper closing of the lab." With respect to the third reason, it must be characterized as an "afterthought" as well as being false. Any deficiencies regarding Smith's prior performance were not revealed by the Clinic until it responded to the EEOC's complaint. The incidents did not cause the Clinic to warn or reprimand Smith. But most importantly, the Clinic admitted that these incidents played no part in Smith's discharge. Ron Hall, the Clinic's manager, wrote to the Unemployment Claims Center, that: "Prior situations for which Ms. Smith had received oral and written warnings on November 15, 1983 had no bearing on appellant being fired."

Thus, in my view, the record demonstrates that the Clinic's asserted reasons for firing Smith were not justified. The reasons were pretextual. The only purpose for such post-hoc justification is to obscure the fact that the Clinic dealt more harshly with Smith because she was black. The clincher is the fact that the Clinic replaced Smith with a white female employee. In my opinion, the trial judge's ultimate findings were not supported by the record and were clearly erroneous.

I would reverse the dismissal of the Title VII claim.