Malinda BALDWIN, Plaintiff,

v.

**BELLSOUTH ADVERTISING AND PUBLISHING CORP., Defendant.**

Civ. A. No. 86–154–1–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 2, 1988.

Thomas M. Jackson, Macon, Ga., for plaintiff.

W. Warren Plowden, Jr., Jones, Cork & Miller, Macon, Ga., Hubert F. Owens, Atlanta, Ga., for defendant.

FITZPATRICK, District Judge.

Plaintiff brings this disparate treatment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and 42 U.S.C.A. § 1981, alleging that Defendant intentionally discriminated against her on the basis of race and sex by failing to promote her to a management position in 1984. The case was tried before the court sitting without a jury on November 23–25, 1987. The court heard closing arguments in the case on December 8, 1987. The court's findings of fact and conclusions of law are set forth below.

I. FINDINGS OF FACT

Defendant BellSouth Advertising and Publishing Corporation (BAPCO) was established on January 1, 1984 as a subsidiary of BellSouth Corporation. Among other things, BAPCO publishes telephone di-

rectories consisting of white and yellow pages for local telephone companies. Plaintiff Malinda Baldwin, a black female, began working for Southern Bell as a telephone operator in March of 1969. In June of 1981 Plaintiff became a Directory Advertising Sales Representative (DASR) for Southern Bell. When BAPCO came into existence in 1984, Plaintiff became a DASR in BAPCO's South Georgia district, and she presently holds that same position.

At or about the time BAPCO was formed, a new division was established within BAPCO known as the National Publishing Division. The primary function of this Division was to sell advertisements for a new publication called the Regional Industrial Pages. BAPCO created management sales positions, referred to as Account Executives, to sell the Regional Industrial Pages. It was determined that BAPCO's DASRs would be the source from which the Account Executive positions would be filled.

Bill Walsh held a staff position with BAPCO at its inception and had as one of his duties the recruiting, selecting and training of the Account Executives. Walsh planned to hire two Account Executives from the south Georgia district and seven Account Executives statewide. A third Account Executive position became available in the south Georgia district a few months after the first two positions were filled. At trial Walsh testified that he was looking for candidates who possessed the following qualifications: (1) proven sales proficiency; (2) strong verbal communication skills; (3) an ability to work in an unstructured environment; (4) strong initial impact; and (5) self-confidence.

Walsh informed the three District Operational Managers in the State of the qualifications he was looking for in the candidates. The District Managers were over the DASRs, and Walsh relied upon these Managers to provide him with candidates for the Account Executive positions. The south Georgia District Manager was W.L. Safewright. Safewright nominated four of his DASRs for the two available positions: Charles Day (white male); Robert Haulbrook (white male); Steve Parker (white male); and Plaintiff (black female).[1] Safewright testified at trial that although proven sales proficiency was a qualification to be considered, he was not willing to give up his best salespersons for the Account Executive positions.

Safewright further testified that he nominated Day, Haulbrook, and Parker based on his understanding of the qualifications for the position, the demonstrated interest of these three men in being promoted, and his own willingness to part with them. Safewright testified, however, that he had a different motivation for recommending Plaintiff. Although Safewright felt that Plaintiff lacked the leadership qualities that would qualify her for a promotion to a sales manager position within his own department, he recommended Plaintiff for the Account Executive position because she had sold well on occasion, had many years of service with the company, had made it well-known that she desired a promotion, and because he wanted to give her the opportunity to be considered for a promotion by someone else in the company.

After receiving the recommendations from Safewright, Walsh began conducting "overviews" of the four nominees from the south Georgia district. These overviews occurred in May of 1984. At trial Walsh testified that the overviews were similar to recruiting talks. During a normal overview Walsh would take fifteen to twenty

---

1. Plaintiff advised the court at trial that she was not contesting the promotion of Charles Day to an Account Executive position. The evidence at trial showed that Day was Safewright's best salesman and was an obvious choice for the promotion. Plaintiff did feel, however, that the promotion of Robert Haulbrook and the later promotion of Stephen Parker were discriminatory in nature. Accordingly, only the promotions of Haulbrook and Parker will be considered in this Order.

minutes to describe the National Publishing Division, the newly formed Account Executive positions, and the Regional Industrial Pages. Near the end of the overview, Walsh would ask the candidate a few questions in an attempt to determine the candidate's interest in being considered further for the job, and then Walsh would give the candidate an opportunity to ask any questions he or she had concerning the Account Executive job.

Walsh testified that both Haulbrook and Parker appeared confident during their individual overviews, and both possessed good communication skills and a high level of motivation. Haulbrook appeared more mature and reflected the attributes of a self-starter. Walsh described Parker as more enthusiastic than Haulbrook and very self-confident, almost to the point of being "cocky." Walsh testified that Parker appeared to be the type of individual that would require more supervision than would Haulbrook. Both Haulbrook and Parker testified at trial that they tried to sell themselves during the overview and attempted to get in contact with Walsh following the overview.

According to his testimony at trial, Walsh's impression of Plaintiff following her overview was quite different from his impression of Haulbrook and Parker. Walsh testified that Plaintiff appeared nervous during the overview. He further testified that she had difficulty in articulating responses to his questions and made no effort to sell herself during the overview. Walsh testified that he came away from the overview with the feeling that Plaintiff lacked self-confidence and became easily stressed in high-pressure situations. Although Plaintiff told Walsh that she wished to be considered further for the job and later submitted a resume, she never tried to get back in touch with Walsh to inquire further about the job. In contrast to Walsh's testimony, Plaintiff stated that she was not nervous at the overview, does not become stressed in high-pressure situations, and does not have weak oral communications skills.

A few days after the overviews, Walsh contacted Safewright by telephone to get Safewright's opinion of the candidates. Walsh also requested the candidates' personnel records and sales information. Walsh and Safewright discussed Plaintiff, and Safewright informed Walsh that Plaintiff would have a rating of "less than satisfactory" on her upcoming DASR appraisal. Safewright also told Walsh that Plaintiff lacked leadership qualities, was not a self-starter, and was inconsistent in her sales results. The testimony indicated that Walsh had largely eliminated Plaintiff from consideration by the time the conversation between Walsh and Safewright took place. Walsh, however, was having a difficult time deciding between Haulbrook and Parker for the final Account Executive position from the south Georgia district.

The substance of what occurred at the overviews was written in a letter prepared by Janet Knoke, the Equal Employment Opportunity Administrator of BAPCO at the time Walsh conducted the overviews. Knoke testified that the information in the letter was provided to her by Walsh in a written narrative and in several phone conversations. The letter stated that Walsh drew each candidate into a question and answer session "which challenged the nominee's fact finding and organizational skills." During this oral exchange Walsh purportedly observed the nominee's "overall sales technique." Plaintiff disputes the fact that such an oral exchange took place during the overview session. Regardless of the specific events that took place during the overviews, the evidence indicated that some verbal exchange occurred during which Walsh could observe a candidate's self-confidence and oral communications skills. Moreover, the overview presented each candidate with an opportunity to express an interest in the job and with an opportunity to persuade Walsh that he or she was the right person for the job.

After considering the personnel files, the sales records of the candidates, the overview sessions, and the information provided by Safewright, Walsh made his selections. The first two Account Executive positions from the south Georgia district were filled by Charles Day and Robert Haulbrook in August of 1984. A few months later Steve Parker was promoted when a new Account Executive position opened. Although Plaintiff claims she was discriminated against because both Haulbrook and Parker were promoted ahead of her, Parker testified at trial that after his promotion, Plaintiff told him she did not begrudge his promotion because he deserved to be an Account Executive.

In addition to Walsh's testimony that Plaintiff did not make a good impression at her overview, Defendant produced other evidence to show why Haulbrook and Parker were promoted to Account Executive positions ahead of Plaintiff. This evidence is considered in more detail below. Among other things Defendant produced performance evaluations to show that Plaintiff's sales results were inconsistent. Defendant also produced evidence to show that in terms of percentage of net sales increase, Plaintiff consistently ranked near the bottom throughout her career as a DASR.

## II. CONCLUSIONS OF LAW

The issue this court must decide is whether Defendant BAPCO intentionally discriminated against Plaintiff Baldwin in denying her a promotion to a management sales position in the Defendant company. Because Plaintiff brings her suit pursuant to both 42 U.S.C.A. § 2000e and 42 U.S.C. § 1981, the court will consider these statutory provisions separately.

### A. *Title VII Claim*

Section 2000e–2(a) of Title VII states in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C.A. § 2000e–2(a) (1981). Pursuant to 42 U.S.C.A. § 2000e–5(f)(3), district courts have jurisdiction over cases brought under section 2000e.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court developed a specific scheme for district courts to follow in deciding Title VII cases. The *McDonnell Douglas—Burdine* test provides "the basic allocation of burdens and order of presentation of proof" for all suits brought under Title VII, including disparate treatment cases such as the one presently before this court. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. The Supreme Court has held that under this scheme, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

■ Under the *McDonnell Douglas—Burdine* test, the plaintiff first must establish a prima facie case of discrimination. As stated by the Supreme Court in *Burdine*, the plaintiff's "burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* at 253, 101 S.Ct. at 1094. In a denial of promotion case, the plaintiff must prove by a preponderance of the evidence that she (1) belongs to a racial minority; (2) applied and was qualified for a job for which the employer was seeking applicants; (3) was rejected for the position; and (4) after the rejection, the position remained open and the employer continued to seek applicants with the same qualifications as the plaintiff. *Cooper v. Fed. Re-*

*serve Bank of Richmond,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

A plaintiff may attempt to prove his or her prima facie case by producing either direct evidence of a discriminatory motive on the part of the defendant, *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773–74 (11th Cir.1982), or by producing sufficient circumstantial evidence to support a prima facie case of discrimination.[2] *Id.; see also United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983). If a plaintiff presents direct evidence of discrimination, the "defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of [the discriminatory] factor." *Lee,* 684 F.2d at 774 (footnote omitted). On the other hand, if a plaintiff presents only circumstantial evidence of discrimination, a de-

fendant can rebut the inference simply by articulating a legitimate, nondiscriminatory reason for the employer's action. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Therefore, the defendant's burden of rebutting a plaintiff's prima facie case supported by direct evidence is greater than the defendant's burden of rebutting a prima facie case supported only by circumstantial evidence. *See McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1553 (11th Cir.1986).

■ At the trial of the instant case, the court found that Plaintiff Baldwin established a prima facie case of discrimination through the use of circumstantial evidence.[3] The court noted that the evidence showed Plaintiff was a black female who sought an available management position for which she was qualified. The court also noted that Plaintiff was rejected, and that Defendant filled the management positions with white males.

Once the plaintiff in a Title VII suit establishes a circumstantial prima facie case of discrimination, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the

2. As noted by the Eleventh Circuit in *Lee,* the four-part test set forth in *McDonnell Douglas* for establishing a prima facie case of discrimination applies only in those situations in which a plaintiff is attempting to prove his or her case with circumstantial evidence. *Lee,* 684 F.2d at 774. The four requirements for stating a prima facie case give rise to an inference of discrimination. If, however, the plaintiff produces direct evidence of discrimination, no inference is required, and "reliance on the four-part test developed for circumstantial evidence is obviously unnecessary." *Id.*

3. The court notes that Plaintiff attempted at trial to produce direct evidence of a discriminatory motive on the part of Defendant. Plaintiff attempted to introduce a statement by Mary Skaggs, an immediate supervisor of Plaintiff, to the effect that those hiring Account Executives "only wanted men for the job." When testifying at trial, however, Skaggs denied making the statement and those involved with hiring applicants for the Account Executive positions denied that they were looking only for men. Moreover, the evidence showed that Bill Walsh, the individual in charge of the hiring process,

interviewed other female candidates and even offered an Account Executive position to one black female.

The court considered the statement only for the purpose of judging the credibility of Skaggs' testimony. The court ruled that the testimony was not admissible as a prior inconsistent statement under Federal Rule of Evidence 801(d)(1)(A) because the alleged statement was not made under oath at a trial, hearing, deposition, or other proceeding. In addition, the court ruled that the statement was not admissible as an admission by a party-opponent under Federal Rule of Evidence 801(d)(2) since Skaggs was not authorized by Defendant to make statements concerning the Account Executive positions. *See Lloyd v. Professional Realty Serv.,* 734 F.2d 1428, 1433 (11th Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985) (employee not authorized to testify as to statements regarding stock offers). Skaggs was never involved with the hiring of Account Executives. Therefore, Plaintiff failed to produce admissible direct evidence of discrimination.

employee's rejection.'" *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant produces evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason, "the presumption of discrimination 'drops from the case.'" *Cooper*, 467 U.S. at 875, 104 S.Ct. at 2799, *quoting Burdine*, 450 U.S. at 255, n. 10, 101 S.Ct. at 1095, n. 10. Following the defendant's presentation of proof, the plaintiff must be given the opportunity to demonstrate that the defendant's proffered reasons for the employment decision are pretextual, *i.e.*, that they are "not the true reason[s] for the employment decision." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

As stated by Justice Brennan in *Aikens*, the plaintiff's burden of showing that the defendant's reasons for the decision were pretextual "'merges with the [plaintiff's] ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" *Aikens*, 460 U.S. at 717, 103 S.Ct. at 1483, *quoting Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (Brennan J., concurring). The Eleventh Circuit likewise has recognized that a plaintiff's burden of showing pretext merges with a plaintiff's ultimate burden of persuading the court that he or she has been the victim of intentional discrimination. *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1451 (11th Cir.1987). Stated simply, once the parties have presented evidence under the scheme set forth in *McDonnell Douglas* and *Burdine*, "the trier of fact 'must decide which party's explanation of the employer's motivation it believes.'" *Cooper*, 467 U.S. at 875, 104 S.Ct. at 2799, *quoting Aikens*, 460 U.S. at 716, 103 S.Ct. at 1482.

As mentioned above, the court has found that Plaintiff Baldwin established a prima facie case of discrimination. Accordingly, the court now must focus on the reasons offered by Defendant for refusing to promote Plaintiff along with the evidence offered by Plaintiff to prove that these rea-

sons are pretextual. The court must then decide whether Plaintiff has carried her ultimate burden of proving that Defendant intentionally discriminated against her because of her race and sex in failing to promote her to an Account Executive position.

Walsh testified that in selecting candidates to fill the Account Executive positions, he considered each candidate's performance in the overview along with each candidate's performance evaluations and sales results. According to the testimony at trial, following the overview with Plaintiff, Walsh had reservations about her sales abilities. Walsh further noted that upon examining Plaintiff's sales records, he found that while Plaintiff had good sales results on some occasions, overall her sales performances were inconsistent. The sales standings produced at trial showed that Plaintiff had good sales results in 1981, her first year as a DASR. In 1982, however, Plaintiff finished at the bottom of those DASRs who had been working in the south Georgia district for a full year. In 1983 Plaintiff finished between Parker and Haulbrook, but through the third quarter of 1984, Parker finished 8th, Haulbrook 13th, and Plaintiff 21st out of 26 DASRs. Walsh made the Account Executive selections during the third quarter of 1984.

Defendant also produced the performance ratings which are given to all DASRs twice a year. These appraisals compare the individual employee with the group in terms of quality and quantity of work. To be "Satisfactory" (S) in quantity of work, an employee's percentage of net revenue increase must be within six percentage points above or below the group average.

Parker had an initial "Less than Satisfactory" (LTS) appraisal as to quantity during his first year as a DASR. Since the LTS performance in 1982, however, Parker has had an S or "More than Satisfactory" (MTS) rating on all remaining DASR appraisals. At the time of the overviews and

selections Parker was MTS. Haulbrook consistently maintained a S rating in quantity, although he did have a LTS performance in quality for the appraisal period immediately preceding the overviews and selections. Following a good year in 1981, Plaintiff had a LTS rating as to quantity on her appraisal for the first half of 1982. During the remainder of 1982 and 1983, and during the first half of 1984, Plaintiff maintained a S performance in both quantity and quality. Shortly after the selections were made, however, the appraisals for the second half of 1984 were completed showing that Plaintiff had received a LTS rating in quantity. When Walsh called Safewright to discuss the candidates shortly after the overviews, Safewright informed Walsh that Plaintiff would have a LTS appraisal for the last half of 1984.

Walsh testified that one main reason he promoted Haulbrook and Parker ahead of Plaintiff was because of a perceived weakness in Plaintiff's oral communication skills. Although Plaintiff vigorously contested Walsh's conclusion about her verbal skills, and testified she had never before been told of such a weakness, the Developmental Reviews (DRs) prepared by Plaintiff's supervisors during her career as a DASR seem to support Walsh's testimony. Developmental Reviews are a monthly evaluation prepared by the immediate supervisors of each DASR. In March of 1984 Mary Skaggs, Plaintiff's supervisor at the time, made the following comment in Plaintiff's Developmental Review:

> Malinda, your presentation is observed as lacking direction or flow ..., we will use the 1 on 1 for Presentation and pitch sessions. Improvement is expected.

In the DR for June, 1984, Skaggs stated:

> Malinda, your major weakness is no flow to your call. Pitch sessions will help develop a flow and bridge from fact find-

ing to presentation to recommendation. The mechanics are there the flow is missing. I expect improvement by next D.R.

Additionally, in July of 1984, shortly before the Account Executive selections were made, Skaggs made the following observation concerning Plaintiff:

> Factfinding is a weak area. Work to develop a flow to your questions. This will lead to a more professional presentation and logical recommendation. We will discuss some good questions to ask every customer. Improvement is expected by next field observation.

■ Based on the testimony and evidence produced at trial, the court finds that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for promoting Haulbrook and Parker ahead of Plaintiff.[4] Therefore, to prevail on the merits, Plaintiff must persuade the court that the reasons articulated by Defendant were pretextual. As mentioned above, this burden merges with Plaintiff's ultimate burden of demonstrating unlawful discrimination. *See Smith*, 808 F.2d at 1451.

The Eleventh Circuit has stated that a plaintiff may show pretext by demonstrating that the defendant's explanation lacks credibility, or by persuading the trier of fact that discrimination was "the more likely motive" behind the employment decision. *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 527 (11th Cir.1983), *citing Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The court went on to state in *Clark*, however, that "[i]f the employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail." *Id.* at 527. If a plaintiff in a disparate treatment case fails to carry the burden of proving the defendant's proffered reasons were pretextual, the plaintiff will have failed to carry the ultimate burden of proving inten-

---

4. The court finds that even if it were to consider the statement of Mary Skaggs, *see supra* note 3, as direct evidence of discrimination, Defendant proved by a preponderance of the evidence at

trial that the same promotion decisions would have been made even absent the alleged discriminatory factors involved.

tional discrimination. *See Smith*, 808 F.2d at 1452.

Plaintiff makes several arguments in support of her position that Defendant's reasons were merely pretextual. Plaintiff contends that the statistical evidence which shows that overall three white males and no blacks or females were promoted from the south Georgia district shows discriminatory motive. Plaintiff further submits that Mary Skaggs' statement concerning management's intent to exclude females from the Account Executive positions is indicative of Defendant's discriminatory intent.[5] Plaintiff also produced the testimony of certain black employees who testified that they had been with the company for several years, had participated in the company's management assessment program, but had never been considered for a promotion into management. These witnesses testified that several whites with less company time and experience had been promoted ahead of them. No evidence was produced, however, to show the job promotions for which these employees had applied, the specifics of who had been promoted ahead of these employees and to what jobs the promotions were made, or how these employees knew they had never been considered for promotions. The evidence also showed that neither of these employees had applied for an Account Executive position and been denied the promotion.[6]

Plaintiff also contends that the fact the selection process was based on subjective evaluations of the District Managers supports a conclusion that Defendant's motive for refusing to promote Plaintiff was discriminatory.[7] The court is not persuaded by the particular reasons Plaintiff was not promoted to an Account Executive position.

---

**5.** Although the court ruled that Skaggs' statement could not be considered as direct evidence of discrimination, *see supra* note 3, Plaintiff argues in her Post–Trial Brief that "the action of the company which followed [the statement], i.e. the recruiting of males only, certainly lends credence to the accuracy of the remark." Two former employees testified that they heard Skaggs make the comment, although Skaggs denies making such a statement. Plaintiff admits that no similar statement concerning the exclusion of blacks could be shown by direct evidence. The court has considered the conflicting testimony only for the purposes of judging the credibility of the witnesses and not as substantive evidence of discriminatory motive.

**6.** The court notes that this case involves an individual claim of discrimination and has not been certified as a class action on the part of other black or other female employees in the Defendant company. The Supreme Court has recognized that "[t]he crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest." *Cooper,* 467 U.S. at 876, 104 S.Ct. at 2799. In *Cooper* the Court noted that unlike a class action where a plaintiff must show "a pattern of discriminatory decisionmaking," *id.* at 876, 104 S.Ct. at 2800, *quoting Int'l Bd. of Teamsters v. United States,* 431 U.S. 324, 360 n. 46, 97 S.Ct. 1843, 1867 n. 46, 52 L.Ed.2d 396 (1977), in an individual claim of discrimination, the inquiry must focus on "the reason for a particular employment decision." *Id.* 467 U.S. at 876, 104 S.Ct. at 2799. In light of the *Cooper* decision, this court has focused on

**7.** Plaintiff cites *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir.1985) in support of her argument that the subjectivity used by Walsh and the District Managers in the selection process provided a channel through which Walsh could discriminate against Plaintiff. The *Miles* court recognized that "subjective evaluations involving white supervisors provide a ready mechanism for racial discrimination [citations omitted]. This is because the supervisor is left free to indulge a preference, if he has one, for one race of workers over another." *Id.* at 871. The evidence in the *Miles* case showed "that there were no guidelines for evaluating performance, written worker evaluations or regular checks done on the employee's work habits." *Id.* Unlike the *Miles* case, however, the case *sub judice* involved the use of both subjective and objective criteria. At trial Defendant produced several documents, including records of sales standings and appraisal forms, which involved an objective comparison of Plaintiff to her peers. Therefore, even though Walsh's decision to promote Haulbrook and Parker ahead of Plaintiff was based in part on subjective evaluations, another large part of his decision was based on objective criteria provided to him by the Defendant company. The concern expressed by the *Miles* court, *i.e.,* that "[t]he employee is left without any objective criteria to point to in order to show competence," *id.,* is not present in the facts before this court.

The court notes that a case pending before the Supreme Court at this time addresses the issue

this argument. The Eleventh Circuit has noted that the use of subjective criteria in making an employment decision is not discriminatory *per se.* *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 775 (11th Cir.1985) (plaintiff bears ultimate burden of proving intentional discrimination even though it is difficult to prove that an employee is qualified for promotion where no specific criteria exist with which employee can compare himself). This court notes, however, that Walsh used several objective reports in addition to his subjective evaluations to make the decisions. Although Plaintiff's District Manager did not speak favorably of Plaintiff to Walsh, the Manager did give Plaintiff the opportunity to be considered for a promotion by someone in the company who did not have a negative predisposition toward Plaintiff, and objective criteria were used in the promotion decisions.

The court notes that some subjectivity is unavoidable in making a decision as to who will be a good salesperson. Although not present during the overviews, the court has had the opportunity to view the witnesses at trial and finds Walsh's testimony concerning the selection process to be credible. Since the court finds Walsh made the selections because he honestly believed that Haulbrook and Parker were more qualified, Plaintiff has failed to show that discrimination was the motivating factor behind Walsh's decision, or that Defendant intentionally discriminated against Plaintiff in promoting Haulbrook and Parker to the Account Executive positions ahead of Plaintiff.

B. *Section 1981 Claim*

42 U.S.C.A. § 1981 states in pertinent part:

All persons within the jurisdiction of the United States shall have the same right

of using subjective evaluations in making employment decisions. *Watson v. Fort Worth Bank and Trust,* Case No. 86–6139 (the Court heard oral argument in this case on January 20, 1988). In the *Watson* case the plaintiff is arguing that the subjective performance factors used

in every State and Territory to make and enforce contracts, to sue ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

Section 1981 can serve as an alternative basis for relief for plaintiffs claiming racial discrimination in the employment context. *See Johnson v. Ry. Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Evans v. Central of Georgia R.R. Co.,* 619 F.Supp. 1364, 1366 (N.D.Ga.1985). To prevail under section 1981, however, a plaintiff must show purposeful, intentional discrimination on the part of the defendant. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 389, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982).

In addressing Plaintiff's Title VII claim, the court found that Plaintiff failed to persuade the court that Defendant intentionally discriminated against her on the basis of race or sex in failing to promote her to an Account Executive position. Because the court's finding on the Title VII claim that no purposeful discrimination existed precludes Plaintiff from recovering under section 1981, the court finds it unnecessary to consider Plaintiff's section 1981 claim further.

For the reasons stated above, the court finds for Defendant on all counts of Plaintiff's Complaint.

by the plaintiff's supervisors in making their promotion decisions tended to perpetuate past discrimination. This case will impact the extent to which employers will be able to use subjective criteria to make promotion decisions in the future.