**Peggy SHARP, Plaintiff,**

v.

**BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, Defendant.**

No. CIV.A.1:01–CV0076JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 21, 2002.

---

David C. Ates, Miller Billip & Ates, Atlanta, GA, Alysa Beth–Ann Freeman, Parks Chesin Walbert & Miller, Atlanta, GA, for Plaintiff.

Steven T. Breaux, BellSouth Corporation, Legal Department, Atlanta, GA, for Defendant.

## ORDER

CARNES, District Judge.

The above-captioned employment discrimination action is before the Court on plaintiff's Objections [33] to the Magistrate Judge's Report and Recommendation [32], which recommended granting the defendant's Motion for Summary Judgment [19] in its entirety. The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that plaintiff's Objections [33] should be **SUSTAINED in part and OVERRULED in part.**

Although the Court sustains plaintiff's objection that the Magistrate Judge erred in concluding that the plaintiff had not presented a *prima facie* case of age discrimination, the Court nevertheless adopts the ultimate recommendation of the Magistrate Judge that the defendant's motion for summary judgment be granted with respect to all of the plaintiff's claims. Thus, the Magistrate Judge's Report and Recommendation [32] is **ADOPTED IN PART and REJECTED IN PART**, and defendant's Motion For Summary Judgment [19] is **GRANTED**.

### FACTS

Plaintiff is a former employee of defendant BellSouth Advertising & Publishing Corporation ("BAPCO") who was discharged on November 29, 1999, after 35 years of service with the company. At the time the plaintiff was terminated from her position as a Sales Manager, she was sixty years old, and she alleges that defendant unlawfully discriminated against her because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* and also because of her race (white), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*

The action is before the Court on the Magistrate Judge's Report and Recommendation [32] granting the defendant's Motion For Summary Judgment [19]. Magistrate Judge Brill concluded that, because plaintiff had failed to present a *prima facie* case of either race or age discrimination, defendant's Motion for Summary Judgment should be granted with respect to all of plaintiff's claims. Plaintiff thereafter filed objections [33] to the Report and Recommendation.

Neither party has objected to Judge Brill's findings of fact, and the Court finds

them to be accurate. Therefore, the Court adopts the findings of fact as set out in Judge Brill's Report and Recommendation, and assumes them to be true for the purpose of this discussion. As noted by the Magistrate Judge, in reviewing the evidence submitted by the parties, the Court must view all evidence and factual inferences in the light most favorable to the plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir.1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993).

The plaintiff, a sixty year-old white woman, was fired by BAPCO on November 29, 1999, after 35 years of service with the company. She had worked for BAPCO as a Sales Manager or "coach," which involved the supervision of other sales employees and the management of sales campaigns in different geographic regions. At the time she was fired in 1999, plaintiff's immediate supervisor was Regional Director Rick Dunn, and Dunn's supervisor was State Manager Richard Gomez.

In early 1999, plaintiff worked in BAPCO's Gwinnett County office, along with a second manager, Berthina Washington, an African–American woman. A sales employee in that office filed an internal complaint with BAPCO's Human Resources department, alleging that Washington had behaved in a racially discriminatory manner. Melva Jones, a Human Resources specialist and an African–American woman, investigated the complaint and the working conditions in the Gwinnett office, and discovered that many employees were unhappy about what they believed were harassing statements allegedly made by the sales managers to spur sales. After her investigation, Jones met with the plaintiff and Washington to discuss the employees' comments and told plaintiff not to worry about the complaints because the employees were "pissed off" that she and Washington had made them work.

Plaintiff was then transferred to the company's Tucker office in the spring of 1999 to manage a new sales campaign. At the time she transferred to the Tucker office, the employees in that office were unhappy about their working conditions and had complained to Dunn about various grievances. The employees were primarily unhappy because Dunn had originally told them they could work out of their homes, but later changed his mind and required them to report to the Tucker office. The employees had also been required to take a cut in pay.

Because of the number of complaints, Dunn initiated a series of "listen up" meetings at which the employees were allowed to present their grievances to Dunn in an informal fashion. During one "listen up" meeting, Delson Ohi–Adeoye, an employee in the Tucker office, complained that the plaintiff had been leaning over him and touching him inappropriately. During a second "listen up" meeting, the employees indicated that the office working environment had improved; further, Ohi–Adeoye told Dunn that the touching by plaintiff had stopped. According to the plaintiff, after these two "listen up" meetings, Dunn gave her no feedback on the employee complaints, except to say that "they were just bitching."

Dunn later asked Melva Jones to interview the employees who worked with the plaintiff on the company's "non-ad campaign," in order to conduct an "attitude workplace survey." After Jones interviewed the employees, she told the plaintiff that they were primarily unhappy with Rick Dunn and were "really pissed" with him because of the salary cut and other work-related issues. According to the

plaintiff, Jones did not tell her she had done anything wrong, except pat Ohi–Adeoye on the back. Plaintiff states that Jones did not tell her that she had violated the company's sexual harassment policy.

Later, Jones came to the Tucker office to review with the employees, including the plaintiff, the company's Equal Employment Opportunity policies, including the policy on sexual harassment. After she made her presentation to the entire office, Jones met with the plaintiff separately and told the plaintiff that she was a "target" for the employees "to go after" because she drove a nice car and wore nice clothes and nice jewelry. According to the plaintiff, Jones told her on several occasions that "any manager" would be having problems with the employees because they were "looking for problems," and that the plaintiff was a "target" because she drove a nice car and wore nice clothes and jewelry.

Plaintiff later went to Dunn and told him that she was tired of hearing about the problems and felt she was being picked on. According to the plaintiff, Dunn told her, "it's a group of black people that have got together and they have turned on you, and this is the situation that you're in." (Sharp Dep. at 78; Report and Recommendation ["RR"] [32] at 6.) Although Dunn told the plaintiff she was doing a great job with respect to her job performance, he also warned her that she should stay away from Ohi–Adeoye, telling her: "He's a crazy son of a bitch. Stay as far away from him as you can. Don't even go close to him. Don't even speak to him." (Sharp Dep. at 91; RR at 6.)

In October, 1999, the plaintiff was transferred to BAPCO's Clayton County office. A week before the plaintiff arrived, a union meeting was held in the Clayton County office, during which Ken Young, a union representative, expressed concern about the plaintiff's arrival possibly upsetting the work environment in that office. At the Clayton County office, plaintiff and Mark Leatherman functioned as the sales managers for that office; Gerard Griffin, who is an African–American male, was one of the sales employees under plaintiff's supervision.

On November 1, 1999, Griffin complained to Jones, both orally and in writing, that the plaintiff had touched him in an inappropriate manner by brushing up against his back. In his written complaint, he alleged that the plaintiff "approached me from behind and rubbed up against me touching my backside. I immediately stepped to the side. At that point Ms. Sharp started to rub my back." (Griffin Dep., Ex. 1; RR at 7.) As plaintiff later described the incident to Jones, she had received a customer complaint that she needed to discuss with Leatherman right away. As she approached Leatherman's office, she found Griffin standing in the doorway with his arms and legs spread out, talking to Leatherman. She came up behind Griffin and touched him on the back, and he "screamed." Plaintiff then said, "Excuse me. I need to give Mark a message right quick," and she gave Leatherman the message and left. (Sharp Dep. at 96; RR at 7.) She then saw Griffin enter Leatherman's office and slam the door.

After Jones received Griffin's complaint about this incident, she interviewed both Griffin and Leatherman over the telephone, but did not speak to them in person. Furthermore, although Jones recommended that the plaintiff be disciplined for this incident, she made that recommendation before she had spoken to the plaintiff about it, which was contrary to company policy. When the plaintiff learned of Griffin's allegations, she called Dunn, and he told her again that it was a "group of black people that have got together and turned

on you, and this is what's caused the problem." (Sharp Dep. at 98; RR at 8.)

On November 29, 1999, Dunn and Jones met with the plaintiff and informed her that her employment with BAPCO was being terminated because of Griffin's complaint that she had touched him inappropriately. At that time, the plaintiff, who had worked for defendant for thirty-five years, was sixty years old and was the oldest BAPCO sales manager in the state of Georgia. Dunn stated in his deposition that he and Gomez made the decision to terminate the plaintiff's employment and that they relied solely on information given to them by Jones. According to Dunn, plaintiff's management style was not a factor in the decision to fire her, and she would not have been fired if Griffin had not complained about her touching him inappropriately.

When Dunn told the plaintiff that she was being fired, he followed a typewritten script that had been prepared with the assistance of a Human Resources representative. Both Dunn and Gomez stated that the script provided the actual reasons for plaintiff's discharge:

> Several times you have been spoken to about your workplace behavior, especially those of a sexual nature. You have made unwelcomed physical contact and have made both direct and indirect statements having an inappropriate sexual connotation with and toward other employees, including employees who you supervise.
>
> After a number of those occurrences you were again presented with, and retrained on related info concerning BellSouth's policies on EEO and harassment free workplace.
>
> \* \* \* \* \* \*
>
> You have recently again engaged in an unwelcome physical contact of a sexual nature with another employee, subordinate to you. You clearly knew such

conduct violates Company policy. Your persistence in continuing such actions despite having been retrained and having been given a stern warning to discontinue such conduct has given us NO alternative but to terminate your service from BAPCO, effective immediately.

(Pl. Br. in Opp. to Def. Mot. for Sum. J. [24], Ex. E; RR at 10.)

Although Dunn and Gomez contend that they jointly made the decision to fire the plaintiff, according to the plaintiff, both of them denied responsibility for the decision when she spoke to them about it later. Plaintiff contends that Dunn told her over the telephone, "Peggy, I want to tell you, you got a raw deal. . . . I was on vacation last week, and I did not know until five minutes before you were going to be terminated that you were going to be terminated." (Sharp Dep. at 104; RR at 10.) She later met with Gomez to ask him why she had been fired and he told her, "I had nothing to do with it. You know, BAPCO is not a little company any more, it's a big company. . . . This was all done out of headquarters. I had no knowledge of it." (Sharp Dep. at 106; RR at 10.)

Plaintiff filed this action on January 10, 2001, alleging that she was actually fired by BAPCO because of her race and age. Defendant contends that it did not discriminate against plaintiff and fired her solely because she had engaged in inappropriate touching of other employees, including her subordinates. Plaintiff argues that defendant's proffered reasons for terminating her employment are merely a pretext for unlawful discrimination. She argues that the company did not actually believe she committed the misconduct of which she was accused, but instead it fired her to appease a group of black employees who were complaining about her. Thus, she contends that the company unlawfully took

her race and age into account when it decided to fire her.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548. However, the movant is not required to negate every element of his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

### II. Standards for Evaluating Employment Discrimination Claims

Plaintiff has asserted a claim under Title VII for race discrimination and a claim under the ADEA for age discrimination. Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA prohibits employers from discriminating against employees over the age of forty on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a).

As the Magistrate Judge discussed in her Report and Recommendation, to prevail on a claim of discrimination under Title VII, a plaintiff must prove that the defendant acted with discriminatory intent. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980–981 (11th Cir.1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th

Cir.1983). Such discriminatory intent may be established by one of three generally accepted methods: by direct evidence of discriminatory intent; by circumstantial evidence meeting the test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or through statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir.1989); *see also Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997); *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir. 1984).

Because direct evidence of discrimination is seldom available, a plaintiff must typically rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Holifield*, 115 F.3d at 1561–62. Under the *McDonnell Douglas* framework, a plaintiff is first required to create an inference of discriminatory intent, and this carries the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310, *modified on other grounds*, 151 F.3d 1321 (11th Cir. 1998). Age discrimination claims brought pursuant to the ADEA are also analyzed under the same *McDonnell Douglas* framework used for claims brought pursuant to Title VII. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1533 n. 3 (11th Cir.1996).

Once a plaintiff presents evidence sufficient to permit an inference of discrimination, and thus establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action, and produce some evidence in support of that reason. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Jones*, 137 F.3d at 1310; *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant is able to meet this burden of production, the plaintiff, in order to prevail, must then present sufficient evidence to demonstrate that the proffered reason is merely a pretext for discrimination. *See Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089.

As set out in the facts above, plaintiff contends that defendant discriminated against her because of her age and race when it terminated her employment after thirty-five years of service with the company. Defendant contends that plaintiff was fired for engaging in inappropriate touching of other employees after having been previously warned not to do so. Defendant denies that plaintiff's age or race played a role in the decision to terminate her employment. The Magistrate Judge concluded that the plaintiff had failed to present a *prima facie* case of either age or race discrimination and, furthermore, even if the plaintiff had presented a *prima facie* case, she had failed to establish that the defendant's proffered reason for firing her was merely a pretext for unlawful discrimination. Thus, the Magistrate Judge recommended that defendant's Motion for Summary Judgment [19] be granted as to all of plaintiff's claims. Plaintiff has objected to the Magistrate Judge's recommendations.

### III. *Plaintiff's Objections*

The plaintiff objects to the Magistrate Judge's Report and Recommendation with respect to three primary issues. First, the plaintiff objects to the Magistrate Judge's conclusion that she failed to present a *prima facie* case of age discrimination. Second, the plaintiff objects to the Magistrate Judge's conclusion that she failed to

present a *prima facie* case of race discrimination. Finally, she objects to the Magistrate Judge's conclusion that she failed to present sufficient evidence to establish that the defendant's proffered reason for firing her was merely a pretext for unlawful discrimination.

### A. Age Discrimination Prima Facie Case

■ Plaintiff's first objection is that the Magistrate Judge erred in concluding that the plaintiff had failed to present a *prima facie* case of age discrimination under the ADEA. It is undisputed that the plaintiff was sixty years old and was the oldest sales manager in her district when she was fired. The Magistrate Judge found that the first two persons hired or promoted after the plaintiff's discharge were approximately forty years old and, thus, because they were also in the class of persons protected by the ADEA, the plaintiff could not establish a *prima facie* case of age discrimination. The Magistrate Judge also found that there were two other sales managers in the district whose ages were within five years of the plaintiff's age who were not fired.

The plaintiff objects to the Magistrate Judge's conclusion, and argues that she need only establish that she was replaced by a "substantially younger" person in order to establish a *prima facie* case of age discrimination, even if that "substantially younger" person is also over forty years old. The Court agrees with the plaintiff and finds that she has presented sufficient evidence that she was arguably replaced by persons who were substantially younger than she. *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1359–1360 (11th Cir.1999) (plaintiff alleging age discrimination must show replacement by a "substantially younger" person, and a five-year age difference is sufficient to meet that burden).

Accordingly, the Court **SUSTAINS** plaintiff's objection, and **REJECTS** that portion of the Magistrate Judge's Report and Recommendation concluding that the plaintiff has failed to present a *prima facie* case of age discrimination.

### B. Race Discrimination Prima Facie Case

■ Plaintiff further objects to the Magistrate Judge's conclusion that she has failed to present sufficient evidence to establish a *prima facie* case of race discrimination. The Magistrate Judge reviewed the evidence and concluded that the first two individuals hired, promoted, or transferred after the plaintiff's termination were also white. The Magistrate Judge thus found that the plaintiff had failed to present evidence that she was singled out for harsh treatment because she is white and, accordingly, she had failed to present a *prima facie* case of race discrimination. (RR at 16.)

The plaintiff objects to this conclusion, arguing that because her situation is unusual and does not fit the mold of the typical employment discrimination case, the *McDonnell Douglas* analysis simply does not apply. She argues that the evidence reflects that the defendant fired her because black employees were complaining about her and the company was worried that the black employees would file a lawsuit. She contends that the defendant fired her to "appease" the black employees and, thus, because BAPCO took her race into consideration when it fired her, the company unlawfully discriminated against her.

The Court rejects the plaintiff's objection and agrees with the Magistrate Judge that the plaintiff has failed to present a *prima facie* case of race discrimination. Plaintiff is correct that not every employment discrimination situation falls neatly

1377

within the *McDonnell Douglas* framework. *See, e.g., Wright v. Southland Corp.*, 187 F.3d 1287, 1291 (11th Cir.1999). Nevertheless, the plaintiff can not simply allege that her race played a role in her discharge; she must present some evidence that would allow an inference that her race somehow played a role. Although plaintiff argues that certain black employees "targeted" her because of her race, she has failed to present evidence to support that claim. The fact that her primary accusers, Ohi–Adeoye and Griffin, may have been African–American does not necessarily lead to an inference that they harbored a racial bias against her when they complained to the company that she had touched them in an inappropriate manner that made them feel uncomfortable.

Furthermore, the plaintiff has not presented any other evidence that would lead to an inference that her race played a role in the decision to fire her. In particular, she has not presented any evidence that BAPCO treated her more harshly than it treated black employees who were accused of inappropriate touching other employees or of other such misconduct. In addition, although the plaintiff argues that she was treated harshly because she was white, and because it was black employees who had made unwarranted accusations against her, she does not dispute that there were other white sales managers working at BAPCO who were not the "target" of complaints and who were not fired. Even viewing all the evidence in the light most favorable to the plaintiff, the Court concludes that the plaintiff's only evidence as to why she may have been "targeted" for complaints is because she made the employees work too hard, or because she drove a nice car and wore nice clothes and jewelry, or because the employees were angry about their salaries being reduced. None of this evidence leads to an inference that her race played any role in the company's decision to fire her.

Plaintiff's contention really seems to be that defendant's racial discrimination lies in its excessive solicitude toward, or fear of complaints made by, black employees. Implicit in plaintiff's argument is a contention that the defendant would not have been so concerned had the complaints been made by a group of white people. Whether or not plaintiff's perception is accurate, any inference by the Court to this effect would be speculation. Further, even assuming that defendant was more deferential to complaints made by black employees, the issue is whether *plaintiff* was treated differently because of her race. That is, had a group of black employees made the same complaints against a black supervisor, would defendant have fired that black supervisor? If defendant would not have fired a black supervisor, plaintiff would be the victim of racial discrimination. Again, however, this Court can only speculate as to how defendant would have responded had plaintiff been a black supervisor. Such speculation cannot be the basis for an inference of racial discrimination.

Accordingly, the plaintiff's objection is rejected and the Court **ADOPTS** the Magistrate Judge's conclusion that the plaintiff has failed to present a *prima facie* case of race discrimination.

#### C. *Pretext*

▋ Plaintiff's final objection is to the Magistrate Judge's conclusion that, even if she had presented a *prima facie* case of either age or race discrimination, she has failed to present sufficient evidence to establish that the defendant's proffered reason for firing her was merely a pretext for unlawful discrimination. Plaintiff contends that she has presented sufficient evidence that the company did not have a good-faith belief that she had ever touched any other employee in a "sexual" way and, thus, the

company, knowing that the accusations against her were not true, fired her anyway. She contends that she has thus presented sufficient evidence that the company's proffered legitimate reason for firing her was instead merely a pretext for unlawful race and age discrimination.

The Court first notes that it has already determined that the plaintiff has failed to present a *prima facie* case of race discrimination. Thus, in addressing her pretext argument, the Court must focus on plaintiff's claim of age discrimination. In order to withstand defendant's Motion for Summary Judgment, the plaintiff must present sufficient evidence that would allow a reasonable factfinder to disbelieve the defendant's proffered reason for firing the plaintiff, and to believe instead that the defendant really fired the plaintiff because of her *age*.

It is undisputed that, when Dunn and Jones met with the plaintiff on November 29, 1999, Dunn read from a prepared script informing the plaintiff that she was being fired because she had "recently again engaged in an unwelcome physical contact of a sexual nature with another employee, subordinate to you." Plaintiff argues that the evidence reflects that neither Jones nor Dunn nor Gomez nor any other manager at BAPCO had made any determination that she had ever touched another employee in a "sexual" manner and, thus, this reason given by BAPCO for firing her was pretextual. She also argues that Jones did not follow company policy in conducting her alleged investigation into Griffin's complaint against the plaintiff. Finally, she notes that both Dunn and Gomez later professed to have no responsibility for the decision to fire the plaintiff, although the company maintains that they jointly made the decision after reviewing Jones's recommendation.

Although the plaintiff has presented evidence that neither Jones nor Dunn had ever made a finding that she had touched an employee in a "sexual" manner, the Court disagrees that this evidence rises to the level of establishing pretext. (*See* Jones Dep. at 27–28.) Defendant has consistently maintained that it fired plaintiff because two employees had complained that she had touched them in an unwelcome, inappropriate manner that made them uncomfortable. Although BAPCO may not have made an explicit finding that the plaintiff had touched either Ohi-Adeoye or Griffin in an overtly "sexual" manner, that does not lead to an inference that the defendant's proffered reason was pretextual. *See, e.g., Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1081 (10th Cir.1999) (when the employer consistently maintained that it fired the plaintiff for inappropriate treatment of female co-employees, any minor discrepancies in its description of the plaintiff's alleged misconduct were merely "minor variations on a central theme" and did not constitute evidence of pretext).

As noted, plaintiff argues further that Jones failed to follow company policy in recommending that she be disciplined before ever speaking to her about Griffin's complaint. She also emphasizes that Dunn and Gomez both denied responsibility for the decision to fire her. She contends that all of this evidence establishes that BAPCO conducted a "bogus" investigation into Griffin's accusations and that the company did not really have a good-faith belief that she had ever touched him or anyone else in an inappropriate manner. Even viewing all the evidence in the light most favorable to the plaintiff, however, the Court rejects her argument that this evidence rises to the level of pretext. Arguably, the plaintiff has shown that she was treated unfairly and that perhaps she was made a sacrificial lamb. Indeed, plaintiff's assertion is not the paranoid ranting of a fired employee, as her own supervisor, Mr. Dunn, con-

firmed after her firing that she had gotten a "raw deal." Plaintiff has not presented evidence that would allow a reasonable factfinder to conclude that the company fired her because of her age, however. *See, e.g., Hardy,* 185 F.3d at 1082 (employer may have selected the plaintiff as a "sacrificial lamb" to show that it would not tolerate sexual harassment, but that action was legal if it was not based on the plaintiff's age or disability).

Although the plaintiff denies that she ever touched any employee in a "sexual" way or even in any inappropriate manner, she does not dispute that she touched both Ohi–Adeoye and Griffin. Likewise, she does not dispute that both of these employees complained to BAPCO that her touching of them was inappropriate and that it made them uncomfortable. Thus, she does not contend that BAPCO fabricated these complaints out of thin air in an effort to fire her because of her age. Instead, she contends that the company disbelieved that she had actually touched either of the accusers in a "sexual" manner, but that the company nevertheless fired her because her accusers were black and she is white. Thus, afraid that a group of black employees would file a lawsuit, the company tried to "appease" this group by firing a white supervisor: the plaintiff.[1]

Yet, although the plaintiff has produced some evidence that Jones did not conduct a thorough investigation into Griffin's allegations against her and that Dunn may have been skeptical that the plaintiff had actually touched Griffin in an inappropriate manner, plaintiff's evidence does not show a pretext for age discrimination. On the basis of this purported evidence, no reasonable factfinder could conclude that BAPCO did not fire plaintiff because of Griffin's complaint, but instead actually fired her because of her age. As the Supreme Court has stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In sum, the plaintiff argues that she was treated unfairly by BAPCO because, concerned that a group of black employees were gearing up to file a discrimination action against the company, defendant BAPCO attempted to prevent that lawsuit by firing the plaintiff, who had become a target of complaints from certain of these dissident employees. If plaintiff's theory is correct, then she did indeed get a "raw deal" when she was fired by BAPCO. With a thirty-five year record of excellent service with the company, plaintiff feels hurt and aggrieved by her treatment, and this Court sympathizes with the distress that is palpable in her pleadings. Indeed, any employee—male or female—who be-

---

1. Defendant has argued that, as an employer, it is essentially "damned if you do, and damned if you don't." Defendant's assertion has some resonance in this case. That is, not only did plaintiff sue defendant because of its response to complaints against her by subordinates, but some of those same subordinates sued defendant over some of the conduct underpinning these complaints. *See Wilson v. BAPCO,* C.A. No. 1:00–CV–2158–BBM, N.D. Ga.

lieves himself or herself to have been wrongly accused of sexual harassment—will understandably feel victimized if sacrificed by an employer in an effort to prevent a lawsuit from the complaining employee. Yet, neither the ADEA nor Title VII prevents such conduct by employers. As the Eleventh Circuit has stated, however:

> Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. "Title VII addresses discrimination.... Title VII is not a shield against harsh treatment at the workplace." Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason ... does not have to be a reason that the judge or jurors would act on or approve."

*Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir.1984) (citations omitted).

In short, no matter how innocuous plaintiff may feel her "misconduct" to have been and no matter how overstated she believes defendant's reaction to these complaints by subordinates to have been, an employer has a right to fire any employee for any reason, including a desire to head off an unmeritorious law suit,[2] as long as the reason is not based on age, sex, or race. Thus, even if BAPCO's decision to fire the plaintiff were proven to be unfair or unwarranted, the plaintiff can not establish that it was done because of a discriminatory intent. Therefore, in the absence of evidence pointing to race or age as the explanation for the employer's conduct, and no matter how sympathetic may be this plaintiff's plight, the Court is compelled to conclude that the defendant is entitled to summary judgment.

Accordingly, the Court **SUSTAINS** the plaintiff's objection [33] that the Magistrate Judge erred in concluding that the plaintiff had not presented a *prima facie* case of age discrimination, but **REJECTS** the remainder of the plaintiff's objections. Thus, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation [32]. The Court agrees with the Magistrate Judge's ultimate recommendation that defendant's Motion for Summary Judgment [19] be GRANTED in its entirety on plaintiff's claims of both age and race discrimination.

### *CONCLUSION*

The Magistrate Judge's Report and Recommendation [32] is **ADOPTED IN PART and REJECTED IN PART**. The Court **ADOPTS** the Magistrate Judge's recommendations, *except* that portion of the Report and Recommendation concluding that the plaintiff has failed to present a *prima facie* case of age discrimination.

---

**2.** Although the alleged harasser and harassee in a sexual harassment complaint frequently have sharply differing accounts of the conduct at issue, an employer has no ability to file an interpleader type action, whereby a neutral third party would determine which of the two employees is truthful and what appropriate action should be taken. Instead, because a sexual harassment law suit can sometimes cost an employer hundreds of thousands of dollars in damages, attorney's fees, and expenses, the latter may sometimes make an economic calculation that it is simply cheaper to fire the employee who is the object of the complaint than it is to risk a law suit even on a seemingly unmeritorious claim.

Although the Court has rejected that conclusion, it agrees with the ultimate recommendation of the Magistrate Judge that defendant is entitled to summary judgment on all of the plaintiff's claims.

Accordingly, defendant's Motion for Summary Judgment [19] is **GRANTED**.