[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11608
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00123-JRH-WLB

ROOSEVELT MEALING, JR.,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF JUVENILE JUSTICE,

Defendant-Appellee,

AUGUSTA YOUTH DEVELOPMENT CAMPUS,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(April 23, 2014)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Roosevelt Mealing, Jr. sued his former employer, the Georgia Department of Juvenile Justice (the "Department"). Mealing alleged that the Department terminated him in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). The district court granted summary judgment in favor of the Department, and Mealing, proceeding pro se, appeals. After careful review of the record and the parties' briefs, we affirm.

## I.  BACKGROUND

From June 2005 until June 2010, Officer Mealing worked for the Department as a juvenile correctional officer, maintaining the safety and security of the Department's juvenile residents and staff.[1]  Juvenile correctional officers, such as Mealing, worked shifts that lasted a fixed amount of time. During these shifts, they were assigned to specific units. For security purposes, the Department had a "hold over" policy, which required each correctional officer to stay at his assigned unit until the correctional officer assigned to the next shift could relieve him from the unit. At times, this hold over policy required an employee to remain at his unit, even though his shift had ended.

During Mealing's employment at the Department, his supervisors included

---

[1]In his amended complaint against the Department, Mealing also named the Augusta Youth Development Campus ("Augusta Campus") as a defendant. The district court determined that the Augusta Campus was operated by the Department and dismissed the Augusta Campus as a defendant. Mealing does not appeal the dismissal of the Augusta Campus, and we do not address this issue further.

Lieutenants Kendra Strowbridge and Victor Martin, Captain Dale Gilmore, and Department Director John Brady.  Mealing believed that Ronnie Woodard supervised Brady.  In June 2010, the Department terminated Mealing's employment.

At issue on appeal is Officer Mealing's claim that the Department terminated him in retaliation for his filing a 2010 grievance and sending 2010 letters to Department employees asserting that he was harassed in the workplace.

To understand Officer Mealing's claim, we provide background regarding (1) Mealing's and Lt. Kendra Strowbridge's 2006 sexual relationship; (2) Mealing's 2007 and 2009 Equal Employment Opportunity Commission ("EEOC") complaints; (3) Mealing's disciplinary history from 2005 to April 2010; (4) Mealing's May 17, 2010 written reprimand concerning his absences from work; (5) Mealing's May 17, 2010 grievance; (6) the Department's claim that Mealing was not properly relieved from his unit on May 22, 2010; (7) Mealing's May 26, 2010 reprimand for being argumentative with a supervisor; (8) Mealing's June 1, 2010 letters to Department employees; (9) Mealing's June 4, 2010 termination; and (10) the district court proceedings.

Officer Mealing's 2010 grievance and letters do not expressly refer to sexual harassment or Lt. Strowbridge.  And, the Department argues that the 2010 grievance and letters are not protected activity under Title VII.  However,

3

Mealing's 2010 letters do mention in one place the phrase "an EEOC complaint." Thus, viewing the evidence in the light most favorable to Mealing, we assume, for purposes of this appeal, that the letters are implicitly referencing the claimed sexual harassment discussed below and thus constitute protected activity under Title VII.[2]

## A.    2006 Relationship with Lt. Strowbridge

From March 2006 to December 2006, Officer Mealing and Lt. Kendra Strowbridge had a sexual relationship. Mealing testified that Lt. Strowbridge forced him into having sex with her throughout 2006 by threatening to make his job at the Department difficult. At one point, Mealing went to Lt. Strowbridge's office, and she performed oral sex on him until he stopped her a few seconds after she began. Mealing told Strowbridge that they were not in an "appropriate setting" and that he was scared.

Lt. Strowbridge told Mealing that he had to "stick with [her]" if he wanted to "get somewhere." She also made similar statements on other occasions. Lt. Strowbridge further stated that, if Mealing gave Strowbridge "what [she] want[ed]" sexually, he could advance in his job at the Department.

---

[2]Mealing relies on his 2010 grievance and letters as his "protected activity" because the district court determined that Mealing was unable to establish a prima facie case of retaliation based on the EEOC grievances Mealing filed in 2007 and 2009. Specifically, the district court determined that Mealing's 2010 termination was too remote in time from his filing of those two EEOC charges to establish causation. Mealing does not appeal that ruling, and this issue is abandoned. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Thus, Mealing's claim on appeal is that his termination was in retaliation for his 2010 grievance and letters.

Throughout 2006, Lt. Strowbridge filed disciplinary reports against Officer Mealing, did not approve his requests for leave, and forced him to stay at work after his shift. She also made Mealing perform certain tasks at the Department so that she could see him.

In December 2006, Mealing ended his sexual relationship with Lt. Strowbridge. Soon after their sexual relationship ended, Lt. Strowbridge informed Officer Mealing that she was going to have him terminated. And, in January 2007, Lt. Strowbridge filed a disciplinary report, stating that Mealing failed to remain on his shift until properly relieved. Also in January 2007, Strowbridge told Mealing that she would send him home from work because she saw him near another female Department employee. During this encounter, she pushed Mealing in the upper torso area, and then she sent him home.

Although Officer Mealing was no longer in a sexual relationship with Lt. Strowbridge, he believed that she continued to sexually harass him. In early 2007, Officer Mealing informed his other supervisor, Lt. Martin, that Lt. Strowbridge was sexually harassing Mealing. It is unclear what action Lt. Martin took after hearing Mealing's complaint.[3]

**B.    2007 and 2009 EEOC Complaints**

---

[3]Shortly thereafter, in April 2007, Mealing was terminated for failing to comply with an order from Lt. Martin, but the Department later rescinded Mealing's termination because it determined that he had sufficiently complied with the order in question.

In June 2007, Officer Mealing filed an unsuccessful complaint with the EEOC, claiming that he was sexually harassed and retaliated against for ending his sexual relationship with Lt. Strowbridge.[4]

Officer Mealing felt that one or more of his superiors at the Department targeted him after he filed this 2007 EEOC complaint.

Officer Mealing filed a second unsuccessful EEOC complaint in 2009. The 2009 EEOC complaint was based on events in 2009, which included the Department's withholding a portion of his pay, denying a request for leave, and failing to promote him. Mealing claimed that he was subject to "harassment by several supervisors" and retaliated against. In his 2009 EEOC complaint, Mealing did not mention sexual harassment.

## C.    Disciplinary History from 2005 to April 2010

The Department's records show that Officer Mealing's various supervisors disciplined Mealing several times throughout 2005 to 2008 by reprimanding him for certain actions. Specifically, in October 2006, Mealing failed to report to work as scheduled and failed to call in to work prior to taking leave. In August 2007, Mealing was reprimanded for absenteeism based on his (1) practice of abandoning his post without permission; (2) taking leave without permission, despite being

---

[4]The complaint appears to have been filed both with the Georgia Commission on Equal Opportunity and the EEOC.

aware of staff shortages; (3) failure to report to work as scheduled on numerous occasions; and (4) failure to notify his supervisors that he would not be in to work prior to the beginning of his shift. The August 2007 reprimand states that Department supervisors discussed Mealing's poor attendance record with him multiple times from 2005 to 2007.

Additionally, the Department's records show that, in November 2008, the Department reprimanded Officer Mealing for failing to properly control and supervise his juvenile-offender unit. There is no evidence that Mealing was disciplined from 2009 to April 2010.

According to Officer Mealing, many of the disciplinary write-ups he received were fabricated because members of the Department's administrative office were "being vindictive to get at [him]."

## D.    May 17, 2010 Written Reprimand About May 3 and 4 Absences

On May 3 and 4, 2010, Officer Mealing called in to work and stated that he was sick. However, on May 4, 2010, a Department supervisor saw Mealing appearing at an unemployment hearing for a former employee and informed Mealing, at the hearing, that he needed a medical excuse for the days that he missed. Mealing told the supervisor that he had a medical excuse in his car to cover his May 3 and 4 absences. On May 7, 2010, Mealing provided the Department with a medical excuse, dated May 5, 2010, from the Center for

Primary Care, which requested that Mealing be excused from work from May 4, 2010 through May 9, 2010.  Mealing did not provide a medical excuse to the Department for his May 3 absence.[5]

On May 17, 2010, Officer Mealing received a written reprimand from Capt. Gilmore for failing to provide accurate documentation for Mealing's May 3 and 4, 2010 absences.  The reprimand stated that: (1) a supervisor saw Mealing outside of work on May 4, despite Mealing's having called into work sick; (2) Mealing's medical excuse for May 4 was dated May 5, but, on May 4, Mealing had informed his supervisor that he already had a medical excuse for that day; and (3) Mealing's medical excuse dated May 5 did not mention Mealing's May 3 absence.  The reprimand concluded that Mealing was dishonest (1) "when questioned by [his] supervisor" about his medical excuse and (2) about the reason he could not report to work.

Capt. Gilmore stated that, while giving Mealing the written reprimand, Mealing: (1) told Gilmore that he  was "ignorant and unprofessional"; and (2) said he knew "how [Gilmore] got [his] job" and who Gilmore was "sleeping with."

Also, Capt. Gilmore stated that, on May 18, 2010, Capt. Gilmore told Mealing the subject was closed when Mealing attempted to discuss the May 17,

---

[5]The evidence shows that Officer Mealing had a medical excuse dated May 3, 2010 and stating that he had an appointment on May 3, 2010 at "Healing Hands," a physical therapy center.  However, no evidence shows that Mealing ever provided this medical excuse to the Department.

2010 reprimand with Capt. Gilmore.  As Capt. Gilmore walked away from Mealing, Mealing displayed argumentative behavior by twice shouting to Capt. Gilmore, "Don't turn your back on me."

In his deposition, Officer Mealing denied verbally attacking Capt. Gilmore after receiving the May 17 reprimand.

### E.    May 17, 2010 Grievance about May 3 and 4 Pay

Because Officer Mealing's absence on May 3 and 4, 2010 was unapproved, his pay was docked for those days.

On May 17, 2010, Officer Mealing filed a grievance with the Department's human resources office complaining that the Department had unfairly docked his pay for May 3 and 4, 2010.[6]  In his grievance, Mealing stated that he was being "harass[ed]" and that no one would explain why his pay was docked.  Mealing did not state that he was being sexually harassed.

In that grievance, Mealing also stated that he received a "call" in which he was informed that he was going to be terminated.

### F.    May 22, 2010 Shift

---

[6]It is unclear whether Mealing filed his May 17, 2010 grievance before or after receiving the May 17, 2010 reprimand.

9

On May 22, 2010, Officer Mealing worked a shift at one of the Department's juvenile facilities.  At the end of his shift, a supervisor called and told Mealing to stay (i.e., hold over) until he could be properly relieved.

Mealing did not stay as requested and instead left work before another correctional officer could relieve him from his post.  A May 22, 2010 Department incident report states that Mealing's co-worker indicated that the same supervisor subsequently gave Mealing permission to leave work without being properly relieved.[7]  The Department, however, disputes whether Mealing received permission to leave his post before being properly relieved.

## G.    May 26, 2010 Written Reprimand

On May 26, 2010, Officer Mealing received another written reprimand from Capt. Gilmore, which stated that Mealing had violated the Department's policy by being threatening, argumentative, and insubordinate and using abusive language when Capt. Gilmore gave Mealing the May 17, 2010 reprimand for abuse of sick leave.

## H.    June 1, 2010 Letters

On June 1, 2010, Officer Mealing sent letters to Director Brady, Brady's supervisor (Woodard), and Mealing's supervisors.  In his letters, Mealing stated,

---

[7]This statement was made by one of Mealing's co-workers in a May 22, 2010 Department incident report.  Although this statement is likely inadmissible hearsay under Rule 801 of the Federal Rules of Evidence, the Department did not object to the district court's consideration of this statement under Rule 56(c)(2) of the Federal Rules of Civil Procedure.

inter alia, that (1) the Department's written reprimands "ha[d] been some sort of harassment"; (2) Director Brady was trying to fire Mealing; (3) Director Brady never helped Mealing and treated Mealing differently because he stood up for "what is right concerning [himself]"; (4) Mealing had filed "an EEOC complaint"; and (5) Mealing was concerned about his Fair Labor Standards Act hours being shortened.

## I.    June 4, 2010 Termination

On June 4, 2010, the Department terminated Officer Mealing and provided him with a letter stating these reasons for his termination: (1) Mealing's disciplinary history; (2) Mealing's misuse of sick leave on May 3 and 4, 2010; (3) Mealing's verbal attack on Capt. Gilmore when Gilmore issued Mealing the May 17, 2010 reprimand; and (4) Mealing's abandoning his post on May 22, 2010 without being properly relieved, despite his supervisor telling him to hold over.

Director Brady recommended Mealing's termination, and the Department's legal office made the ultimate decision to terminate Officer Mealing.  The Department has conceded that Director Brady was a decisionmaker involved in the decision to terminate Mealing.

## J.    District Court Proceedings

In September 2010, Plaintiff Mealing brought this lawsuit in the district court.  His amended complaint alleged, inter alia, that the Department terminated

11

him in retaliation for filing "complaints and letters." In this appeal, Mealing explicitly states that the protected activities at issue are the May 17, 2010 grievance and the June 1, 2010 letters, and Mealing does not claim that he was retaliated against for any other reason.[8] Thus, we focus on only whether Mealing was terminated in retaliation for (1) filing the May 17, 2010 grievance and (2) sending the June 1, 2010 letters.

The district court granted the Department's motion for summary judgment. In ruling on Mealing's retaliation claim, the district court assumed that (1) Mealing established a prima facie case of retaliation and (2) the May 17, 2010 grievance and June 1, 2010 letters constituted protected activities. The district court determined, however, that Mealing failed to show that the Department's articulated, legitimate reasons for terminating him were pretextual and, thus, granted summary judgment in favor of the Department. Mealing timely appealed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the plaintiff. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006). A district court should "grant summary judgment if the movant shows that there is no genuine

---

[8]We note that Mealing also filed a special incident report on May 18, 2010. However, that report does not show that he was complaining of an "unlawful employment practice," and thus, his filing of that report was not a protected activity under Title VII. 42 U.S.C. § 2000e–2(a).

12

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "mere scintilla" of evidence supporting the opposing party's position will not suffice to show that there is a genuine dispute as to a material fact. Brooks, 446 F.3d at 1162 (internal quotation marks omitted).

### III. RETALIATION

Title VII establishes that it is an "unlawful employment practice" to discriminate against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

Title VII forbids an employer from retaliating against an employee because he has opposed "an unlawful employment practice." 42 U.S.C. § 2000e-3(a). The Supreme Court recently held that a plaintiff must demonstrate that his protected activity was the "but-for" cause of the adverse employment decision. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. —, —, 133 S. Ct. 2517, 2534 (2013).

When a plaintiff produces only circumstantial evidence to prove Title VII retaliation, this Court uses the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).[9] Under

---

[9]We conclude that the McDonnell Douglas framework continues to apply after the Supreme Court's Nassar, holding that a plaintiff must demonstrate "but-for" causation when making a Title VII retaliation claim. See Nassar, 133 S. Ct. at 2534. In reaching its conclusion

McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation, which creates a presumption that the adverse action was the product of an intent to retaliate. Id. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII, (2) he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse action exists. Id.

"Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." Id. (quotation marks omitted). If the defendant carries this burden, the plaintiff then must show that the legitimate reasons offered by the employer for taking the adverse action were pretexts for unlawful retaliation, Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001), and that the plaintiff's protected activity was the "but-for" cause of the adverse action, see Sims v. MVM, Inc., 704 F.3d 1327, 1334 (11th Cir. 2013) (ADEA); Nassar, 133 S. Ct. at 2534.

---

in Nassar, the Supreme Court relied on its earlier decision in Gross v. FBL Financial Services, 557 U.S. 167, 129 S. Ct. 2343 (2009), interpreting the Age Discrimination in Employment Act's ("ADEA") phrase "because of . . . age" and holding that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action. See Nassar, 133 S. Ct. at 2523; see also Sims v. MVM, Inc., 704 F.3d 1327, 1333-34 (11th Cir. 2013) (holding that the McDonnell Douglas framework continues to apply to ADEA cases after the Supreme Court's decision in Gross).

14

To establish pretext, a plaintiff "must demonstrate that the proffered reason was not the true reason for the employment decision." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted).  If the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each reason.  Chapman v. AI Transp., 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).  Reasons are pretextual only if (1) the reasons were false and (2) retaliation was the real reason for the employment decision.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).

Here, we assume, as the district court did, that Officer Mealing met his burden of establishing the initial prima facie case.  In turn, the Department states that it terminated Mealing's employment in June 2010 because: (1) Mealing had a disciplinary history; (2) on May 3 and 4, 2010, Mealing misused sick leave; (3) on May 17, 2010, Mealing verbally attacked Capt. Gilmore; and (4) on May 22, 2010, Mealing abandoned his post without being properly relieved.  The Department has thus articulated legitimate, nondiscriminatory reasons for terminating Mealing's employment.

In response, Officer Mealing contends that the Department's reasons for terminating him were false and pretexts for unlawful retaliation.  Because the

15

Department is entitled to summary judgment unless all four reasons are pretextual, we review each reason.

First, as to his disciplinary history, Officer Mealing asserts that the Department fabricated much of his disciplinary history. However, Mealing has not presented any evidence showing which written reprimands against him were false, who falsified the reprimands, and, most importantly, that the Department's legal office and Director Brady had knowledge of any alleged fabrication. Thus, Mealing has failed to create a genuine dispute of material fact as to this reason for his termination. See Holifield v. Reno, 115 F.3d 1555, 1556-57, 1564 n.6 (11th Cir. 1997) (affirming district court's decision, determining that pro se litigant's conclusory allegations, unsupported by the evidence, were insufficient to withstand summary judgment); see also Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

Second, Officer Mealing does not dispute that he was not at work on May 3 and 4, 2010. It is also undisputed that, on May 4, a supervisor saw Mealing outside of work, at a former employee's unemployment compensation hearing. At the hearing, Mealing told the supervisor that he had a medical excuse in his car for May 3 and 4. However, the medical excuse he ultimately submitted for May 4 was dated May 5. And, Mealing did not submit a medical excuse for his May 3

16

absence to the Department.  Thus, Mealing failed to create a genuine factual dispute as to whether the Department's legal office and Director Brady honestly believed that Mealing misused sick leave on May 3 and 4 and terminated him for this reason.[10]

Third, the Department states that it also terminated Officer Mealing for verbally attacking Capt. Gilmore on May 17 and 18, 2010.  In his deposition, Capt. Gilmore attested that Mealing verbally attacked him, as Capt. Gilmore had stated previously in the May 26, 2010 reprimand.  Further, in his deposition, Director Brady testified that he believed that Mealing had verbally attacked Capt. Gilmore. We recognize that Mealing testified that he did not verbally attack Capt. Gilmore. But, this does not create a genuine dispute of material fact as to whether the legal office and Director Brady genuinely believed that Mealing had, in fact, verbally attacked Capt. Gilmore and terminated Mealing because of that verbal altercation. See Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310-11 (11th Cir. 2012) (holding that, where a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry into pretext is limited to deciding "whether the employer gave an honest explanation of its behavior") (quotation marks omitted); accord Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f

---

[10]We reject Mealing's argument that the two-week delay between his May 3 and 4 sick leave and his May 17 receipt of the reprimand for abuse of sick leave shows that he did not truly abuse sick leave.

the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief," the discharge does not violate federal law).

Finally, we need not review the fourth reason for Officer Mealing's termination (that he improperly left his post on May 22, 2010) because he has not rebutted three of the four reasons. See Chapman, 229 F.3d at 1037 (providing that, if the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each reason).

In any event, Officer Mealing has presented no evidence that his termination would not have occurred but-for the May 17, 2010 grievance and June 1, 2010 letters.

## IV. FEBRUARY 2012 DEPOSITIONS

On the last page of his brief, Officer Mealing appeals the magistrate judge's order striking several depositions that Mealing took on February 3, 2012 without the knowledge or participation of the Department or its counsel.

Rule 30(b)(1) of the Federal Rules of Civil Procedure provides that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address." As the magistrate judge found, Mealing failed to provide written notice to the Department. Although

Mealing filed a "Motion for the plaintiff to enter more witness[es]" prior to taking the February 3, 2012 depositions, the document did not sufficiently inform the Department that Mealing intended to depose certain parties and did not set forth a date for when the depositions would occur. Thus, we cannot say that the magistrate judge abused his discretion in striking these depositions. We add that the magistrate judge provided Mealing with an opportunity to retake the stricken depositions.

## V.  CONCLUSION

For all of the foregoing reasons, we conclude that the district court did not err in granting summary judgment in favor of the Department on Mealing's retaliation claim.

**AFFIRMED.**

19