[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-14275
Non-Argument Calendar

————————————————

D.C. Docket No. 2:19-cv-00661-ACA

JESSE LEE, III,

Plaintiff-Appellant,

versus

SAFE-DRY CARPET AND UPHOLSTERY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama

————————————————

(August 27, 2021)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jesse Lee, III, appeals the district court's order granting summary judgment in favor of Safe-Dry Carpet and Upholstery on his Title VII and 42 U.S.C. § 1981 race discrimination claims. After careful review, we affirm.[1]

## I.     BACKGROUND

The district court's summary judgment order thoroughly recited the facts. We recount only those facts necessary to the disposition of Lee's appeal, construing the record in the light most favorable to Lee. *See infra* Part II. Safe-Dry, a business with multiple locations across the southern United States, hired Lee, who is African American, as a technician in its Birmingham, Alabama office. Kevin Hendricks, who is white, was general manager of Safe-Dry's Birmingham office and made the decision to hire Lee.

For his second assignment, Safe-Dry asked Lee to clean Alvin Richardson's couch. Richardson requested a reservice when Lee failed to remove an odor from his couch. Assistant manager Chad Donaldson approached Hendricks about Richardson's reservice request and initiated a conversation about terminating Lee. Donaldson reported that Richardson had complained about Lee's behavior, which Richardson later denied. Hendricks decided to terminate Lee, and Donaldson informed him of this decision. Donaldson, however, told Lee that Safe-Dry had to let him go due to lack of work. In total, Lee worked for Safe-Dry for twelve days.

---

[1] Lee's motion to file a reply brief out of time is GRANTED.

The day after Lee was terminated, Safe-Dry dispatched Chris Ezekiel, one of its white technicians, to reservice Richardson's couch. Reservice requests were common at Safe-Dry and, according to Hendricks, did not necessarily indicate poor performance by the technician. Indeed, Richardson would go on to request reservice two more times, and Ezekiel was not terminated as a result of the requests.

Hendricks was responsible for interviewing, hiring, and firing technicians for the Birmingham office beginning in about July 2017, when he served as Sales Manager. He was promoted to General Manager in October 2017 and continued those duties. Hendricks hired Lee later that month.

Safe-Dry routinely experienced high turnover among technicians, so Hendricks was consistently hiring and terminating workers. Due to the high turnover rate, the racial makeup of Birmingham technicians fluctuated. From October 2017 until the time he learned that Lee had complained of racial discrimination in 2019, half of the technicians Hendricks hired were African American.

Looking specifically to the time of Lee's brief tenure at Safe-Dry, turnover resulted in a change in the racial makeup of technicians in the Birmingham office. When Hendricks became General Manager in early October 2017, all five technicians in the Birmingham office were African American. By late October,

when Lee was hired, three of the four technicians in the Birmingham office were African American. The three new technicians Hendricks hired after Lee all were white. By the end of November 2017, four of the five technicians in the Birmingham office were white.

After the Equal Employment Opportunity Commission issued him a right-to-sue letter, Lee filed this action against Safe-Dry, alleging that he was terminated due to racial discrimination. Safe-Dry moved for summary judgment, arguing that it presented a legitimate, nondiscriminatory reason for terminating Lee and that it did not fire Lee because of his race. The district court granted that motion. The court concluded Safe-Dry provided a legitimate reason for Lee's termination, Hendricks's honest belief in Donaldson's account of Lee's poor performance. The district court further determined that Lee did not provide enough evidence to support the inference that Safe-Dry's reason for his termination was pretextual. This is Lee's appeal.

## II.  STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

4

R. Civ. P. 56(a).  The moving party may meet this standard by demonstrating a lack of evidence supporting the essential elements of the non-moving party's claims.  *Moton*, 631 F.3d at 1341.

### III.  ANALYSIS

Lee argues that the district court erred in two respects by granting Safe-Dry's motion for summary judgment.  First, he argues that the district court erroneously concluded that Safe-Dry offered a legitimate, nondiscriminatory reason for Lee's termination when it concluded that Hendricks relied in good faith on Donaldson's information in making his decision.  Second, Lee argues it was error for the court to conclude that Safe-Dry's reasons were not pretext for racial discrimination.  We disagree.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 also provides a cause of action for termination based on race.  42 U.S.C. § 1981.  "Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d

1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Typically, we assess Title VII claims based on circumstantial evidence using the framework set forth in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 802–05 (1973).  The *McDonnell Douglas* burden-shifting framework places the burden of establishing a *prima facie* case of discrimination on the employee.  *See id.* at 802; *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767–68 (11th Cir. 2005) (describing elements of "the familiar *McDonnell Douglas* framework").  An aggrieved employee may establish a *prima facie* case by showing that (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) his employer treated similarly situated employees outside his protected class more favorably, and (4) he was qualified to do the job.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  If the employee successfully makes this showing— and we assume Lee did, for purposes of this opinion—the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action.  *McDonnell Douglas*, 411 U.S. at 802.  If an employer comes forward with such a reason, the employee may nonetheless prevail if he shows that the employer's stated reason was a pretext for discriminatory animus.  *See id.* at 804.

The *McDonnell Douglas* framework is not the only option for a plaintiff relying on circumstantial evidence to withstand a motion for summary judgment.

A triable issue of fact exists "if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence" from which a jury could infer that the decisionmaker intentionally discriminated against the plaintiff. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted).

With that background, we proceed to discuss Lee's arguments, examining them primarily through the lens of *McConnell Douglas*, because that is primarily how Lee has framed them.

### A. Safe-Dry's legitimate, nondiscriminatory reason for terminating Lee

Lee argues that the district court erred in concluding that Safe-Dry offered a legitimate, nondiscriminatory reason for his termination, namely, Hendricks's good-faith belief that Lee showed poor performance, work ethic, and attitude. We are unpersuaded by his challenge.

The legitimate, nondiscriminatory reason offered by an employer for an action need not be one a judge or juror would act on or approve. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999). An employer must simply advance an explanation for its action that is not discriminatory in nature. *Id.* An employer's burden to articulate a nondiscriminatory reason is a burden of production, not of persuasion. *Vessels*, 408 F.3d at 769. This burden involves no

7

credibility determination and is "exceedingly light." *Id.* at 769–70 (internal quotation marks omitted).

An employer's honest, good-faith belief that an employee violated its policies is a legitimate reason for termination even if the employer's belief may have been mistaken or wrong. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). We may not scrutinize the validity of an employer's belief; rather, we merely ask "whether this belief was the reason behind [the plaintiff's] discharge." *Id.* If the decisionmaker "fired an employee because [he] honestly believed that the employee had violated a company policy, even if [he] was mistaken in such belief, the discharge is not 'because of race.'" *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987). The same logic applies to poor performance. *See Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail, the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed the plaintiff's performance to be unsatisfactory[.]").

The district court correctly determined that Safe-Dry discharged its light burden. The record reflects that Hendricks terminated Lee based on information Donaldson provided to him. Donaldson reported to Hendricks that Lee failed to service Richardson's couch properly and showed a bad attitude on the job.

Hendricks never spoke to Richardson or Lee directly.  And, when Hendricks terminated Lee, Hendricks was unaware that Richardson would eventually request a third and then a fourth reservice visit.  Hendricks "spoke with Chad [Donaldson], and that was it."  Doc. 49-6 at 24.[2]   Hendricks concluded, based on Donaldson's report, that Lee did poor quality work, had a bad work ethic, and showed a negative attitude.  Hendricks's good faith belief in Donaldson's account of Lee's performance, even if that account was mistaken, constitutes a legitimate, nondiscriminatory reason for terminating Lee.

Lee resists this conclusion.  He argues that Safe-Dry produced no actual *evidence* of a legitimate reason because Hendricks admittedly had no personal knowledge of the purported reasons for terminating him, Hendricks never observed any behavior by Lee that warranted termination, and Donaldson provided no testimony in this case.  He also argues that Safe-Dry "offer[ed] no documents that prove the articulated reason" for his termination.  Appellant's Br. at 22.  Our precedent does not require evidence that the employee actually engaged in conduct like poor performance warranting termination, however; rather, it requires only evidence of the decisionmaker's good faith belief that the employee engaged in such conduct.  *See Moore*, 683 F.2d at 1323 n.4.  Hendricks's testimony supplied

---

[2] "Doc." numbers refer to the district court's docket entries.

that evidence and satisfied Safe-Dry's light burden to establish a legitimate reason for his termination.[3] *See Vessels*, 408 F.3d at 769–70.

## B. Lee's failure to show pretext

Lee also argues that the district court erred in concluding that he failed to show Safe-Dry's reasons for his termination were pretext for racial discrimination. To show pretext, a plaintiff must show "*both* that the [employer's] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). In asserting pretext, a plaintiff cannot merely make conclusory allegations and assertions but must present specific facts. *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).

Even assuming the record supports Lee's contention that Safe-Dry did not terminate him because Hendricks believed him to be a poor technician, Lee has failed to satisfy his burden in demonstrating pretext because the record contains insufficient evidence from which a finder of fact could infer that the real reason for

---

[3] We also reject Lee's contention that the district court erred in relying on Safe-Dry's argument that Hendricks had an honest belief that the reasons for terminating Lee were true. Lee asserts that Safe-Dry raised this argument for the first time in its reply brief in support of summary judgment, and that by not permitting him to respond the district court deprived him of an opportunity to rebut Safe-Dry's new argument. But Safe-Dry's arguments were not new. In its motion for summary judgment, Safe-Dry acknowledged that Hendricks had no personal interaction with Lee and "d[id] not remember the specifics but relied upon information provided to him." Doc. 44 at 5. Safe-Dry explained that Hendricks terminated Lee "based on information provided to him by a Safe-Dry employee regarding Mr. Lee's lack of work quality, lack of work ethic[,] and his overall negative attitude as a technician." *Id.* at 6. Although Safe-Dry did not use the words "honest belief" or "good faith belief" in its brief, it adequately conveyed that Lee's termination was based on information Hendricks believed to be true but of which he had no firsthand knowledge.

his termination was because he is African American.  *See Flowers v. Troup County, Ga., Sch. Dist.*, 803 F.3d 1327, 1337–38 (11th Cir. 2015); *See Vessels*, 408 F.3d at 771.

In *Flowers*, we granted that evidence contradicting an employer's proffered legitimate, nondiscriminatory reason "is highly suggestive of pretext" but explained that the contradiction, alone, was insufficient to permit a plaintiff to survive a motion for summary judgment.  *Flowers*, 803 F.3d at 1339.  "Allowing the plaintiff to survive summary judgment would be inappropriate, for example, if the record conclusively revealed some other, nondiscriminatory reason" for the plaintiff's termination.  *Id.* (internal quotation marks omitted).  Here, both Safe-Dry's proffered reason and the reason Lee was given at the time of his termination were nondiscriminatory.  So the existence of contradictory reasons for his termination, alone, does not get him over the summary judgment hump.  Nothing else in the record gets Lee there.

In *Flowers* we explained that a plaintiff may provide evidence of pretext via comparators "whose more-favorable treatment could support a reasonable jury's inference that the [defendant's] decision to fire [the plaintiff] was pretext for race discrimination."  *Id.*  But the Court cautioned that the comparator's alleged conduct must be "nearly identical to the plaintiff's" to prevent courts from second-guessing employers' decisions.  *Id.* at 1340 (internal quotation marks omitted).

11

Lee argues that he can demonstrate that Safe-Dry acted in a racially discriminatory fashion for three reasons. First, Lee suggests that Ezekiel is a valid comparator because he is a white technician who was not terminated after failing to clean Richardson's couch. Second, Lee states that Ezekiel was assigned more jobs than Lee even though they started around the same time. Third, Lee alleges that changes to the racial makeup of the technicians in the Birmingham office under Hendricks's management show a pattern and practice of discrimination. These arguments fail.

Lee contends that Safe-Dry's treatment of Ezekiel, a white technician, shows disparate treatment by race. Ezekiel also serviced Richardson's couch, only days after Lee. Ezekiel ultimately serviced the couch three times and still failed to remove the odor. However, as *Flowers* indicates, Ezekiel is not sufficiently similar in position to Lee to demonstrate disparate treatment by race. The crux of Safe-Dry's argument is not that Lee *actually* performed poorly but that Hendricks believed he did based on Donaldson's comments. There is no indication in the record that Donaldson also complained to Hendricks about Ezekiel's performance. This renders them dissimilar for purposes of a comparator analysis, far from the match demanded by *Flowers*. Further, at the time that Lee was terminated, Hendricks did not know that the couch would prompt not just one, but additional reservice requests, and ultimately prove impossible to clean. To use Ezekiel to

12

assess Lee's claim would be tantamount to "confusing apples with oranges." *Flowers*, 803 F.3d at 1340 (internal quotation marks omitted).

Second, Lee suggests that Safe-Dry assigned him fewer jobs on account of his race. Lee indicates that Ezekiel, who was hired only one week before Lee, was assigned 12 jobs to Lee's three during their respective first weeks. Safe-Dry notes that Lee's truck was broken during part of the time that he was employed, limiting the number of jobs he could complete. Under *Flowers*, Lee's broken truck renders him sufficiently dissimilar to Ezekiel to make the comparator analysis inappropriate. Safe-Dry also points out in its records that the number of jobs assigned to each technician routinely varies from week to week according to factors such as location, size of job, and state of the technician's vehicle. The record does not suggest a larger pattern of allotting fewer jobs to African American technicians as would be needed to show a location-wide practice of discrimination in assignments.

Third, Lee proposes that changes to the aggregate number of African American technicians in the Birmingham office under Hendricks's supervision demonstrate a pattern of racial discrimination against African American job applicants and employees. He highlights the facts that earlier in the same month that Lee was hired the Birmingham office employed only African American technicians, but by the end of the month when Lee was terminated, the location

13

had transitioned to four white employees and only one African American technician. Plus, he points out, the next three hires after Lee all were white. Viewed in isolation, these statistics may seem suggestive of pretext. In view of "all of the surrounding facts and circumstances," however, Lee has not met his burden. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977). Turnover indisputably was high at Safe-Dry, and so fluctuations in the racial makeup of technicians in a brief snapshot of time are of little probative value. Looking at Hendricks's tenure overall, there is no indication of racial disparity in hiring. Moreover, Lee offered no information concerning the racial makeup of Safe-Dry job applicants, so we cannot surmise whether the candidates whom Hendricks selected evidenced a preference for white over African American hires. Nor did Lee provide any evidence as to the circumstances of other African American technicians leaving Safe-Dry, so we do not know whether Hendricks was terminating them or they were leaving of their own accord. Given these observations, we are unconvinced that the statistics in the record are suggestive of pretext.

Lee has failed to demonstrate the existence of a genuine issue of material fact as to whether Safe-Dry's proffered reason for his termination was pretext for racial discrimination.

14

## C. No Convincing Mosaic

A plaintiff "will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent," whether or not he satisfies the *McDonnell Douglas* framework. *Smith*, 644 F.3d at 1328. Lee argues that "the evidence offered by safe-Dry demonstrates a pattern over eight weeks in which their workforce in Birmingham went from five African American technicians to only one" and posits that Hendricks was the cause. Appellant Br. at 41. He asserts that this evidence, plus "the wealth of additional evidence of pretext," satisfies *Smith*'s "convincing mosaic" standard. *Id.* at 42. For the same reasons we have articulated, however, the record does not contain circumstantial evidence that creates a triable issue regarding whether Safe-Dry actually terminated Lee because of his race.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Safe-Dry.

**AFFIRMED.**

15